SAMUEL R. STROTHERS vs. DENISE L. STROTHERS.

No. 89-P-943.

Middlesex. December 10, 1990. - March 6, 1991.

Present: KASS, KAPLAN, & IRELAND, JJ

*Practice, Civil*, Continuance, Conduct of judge, Self-representation. *Divorce and Separation*, Child support.

The judge at the trial of a divorce proceeding erred in engaging in ex parte commmunications with counsel for the husband. [191-192]


COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on March 6, 1985.

The case was heard by *Edward M. Ginsburg*, J.

*Joseph D. Kropp* for Denise L. Strothers.

*Denise L. Strothers*, pro se.

*Harley H. Anderson* (*Susan A. Watts* with him) for Samuel R. Strothers.

IRELAND, J. Denise L. Strothers' appeal from a judgment of divorce and an award of child support presents two questions: whether the Probate Court judge erred in (1) denying her motion for a continuance so she could attempt to obtain counsel; and (2) engaging in ex parte communications with counsel for the husband.

We draw background facts from findings made by the judge. Just a few months after the birth of their fifth child, Samuel R. Strothers' wife of nineteen years died. He advertised for a housekeeper, and Denise L. Rock, then a twenty-five year old single mother, applied for the position and was hired. After Denise had been employed for about two weeks, Samuel, then forty-three years of age, proposed marriage to her. On April 16, 1983, three weeks after she began work as his housekeeper, Denise and Samuel married and began a

brief and troubled union. They lived together in Samuel's first marital residence in Framingham.[1] On May 14, 1984, their child, Naomi, was born. Denise was primary and almost sole caretaker of Naomi, as Samuel chose to spend most of his time in California. He provided very little support to either Denise or Naomi.

On July 26, 1984, Denise, represented by counsel, filed a complaint for divorce. After an apparent reconciliation, Denise was allowed to dismiss her complaint on December 11, 1984. On March 6, 1985, Samuel, represented by counsel, filed a complaint for divorce, alleging cruel and abusive treatment. On March 22, 1985, Denise, represented by counsel, filed an answer and counterclaim, alleging cruel and abusive treatment.[2] A temporary order for support of $125 per week entered on March 26, 1985, of which Samuel claims he neither received notice nor had knowledge. Nonetheless, on June 10, 1985, he was held in contempt of court for failure to comply with the temporary order for support.[3] He was at that time ordered to pay arrears and attorney's fees. Samuel paid support for a limited time, but never paid arrears or attorney's fees. He also hindered discovery by filing incomplete and evasive answers to interrogatories, and was ordered to pay sanctions and attorney's fees as a result of his nonresponsiveness.[4] While Samuel appears to owe De-

---

[1]This property was the subject matter of a trust established in 1982 for the benefit of Samuel's five children before his first wife's death and Samuel's remarriage.

[2]Later, in the course of the divorce hearing, counsel for Samuel proposed "mak[ing the action] a 1B" [G.L. c. 208, § 1B], which Denise accepted. The court then found that there was an irretrievable breakdown of the marriage.

[3]At that time, Denise was represented by her second attorney, the first having withdrawn for reasons not apparent from the record.

[4]Samuel's responses to interrogatories were peppered with the phrase, "I refuse to answer this question." In September, 1985, a probate judge found that his conduct had "been evasive and frivolous." The constable serving a December 22, 1986, contempt summons and complaint attested to the following: "By virtue of this summons, I this day delivered a true and attested copy thereof and a complaint for contempt upon Samuel Strothers by pushing both documents through the window of his rented automobile while at the same time in his effort to avoid service the defend-

nise's second attorney a total of fifteen hundred dollars in fees,[5] the record contains an October, 1985, entry by a Probate Court judge, reserving the matter of fees and costs until the case was heard on the merits. With no cash in hand, however, Denise's second lawyer was allowed to withdraw in February, 1986, without Denise's consent.[6] Due to financial constraints, Denise was unable to engage other counsel.[7] ·

The day before the start of the trial, Denise filed, pro se, an ex parte motion[8] for a continuance in order to attempt to obtain counsel. The court denied her motion, pointing out that Samuel had come from California to Massachusetts for trial, and that correspondence from Samuel's lawyer plus a copy of a letter from her former attorney to the court, see note 8 *supra*, gave Denise notice that "at least something was going to happen in the Court." Denise was forced to proceed pro se.

1. *The denial of the wife's motion for a continuance.* The general rule in Massachusetts is that a continuance "shall be granted only for good cause." Mass.R.Dom.Rel.P. 40(b) (1975). As the basis of her motion, Denise claimed she had not been provided with adequate notice of the trial date.[9]

---

ant struck me with the automobile, in an attempt it appears to me, to inflict harm upon me, knowing full well at the time that I was and am a Constable of the Town of Framingham."

[5] A review of the record reveals (a) a June 10, 1985, contempt finding and order to pay legal fees of two hundred dollars; (b) a September 17, 1985, allowance of three hundred dollars in counsel fees for filing "nonresponsive answers"; and (c) a September 17, 1985, allowance of Denise's motion for counsel fees in the amount of one thousand dollars.

[6] Denise's second attorney filed a motion to withdraw stating that her client had been uncooperative in preparing for trial and that meaningful communications between them had broken down. The attorney also cited Denise's inability and Samuel's refusal to pay fees as support for her motion. In June, 1986, the attorney, having sued Denise for the unpaid legal fees, asked the court to order Samuel to pay the court ordered fee payments, see note 5 *supra*, directly to her.

[7] Denise, her older daughter, and Naomi, are all now on public assistance.

[8] The record does not indicate whether notice was provided to Samuel Strothers or his attorney.

[9] Counsel for Samuel inquired by a June 3, 1986, letter whether Denise

The decision whether to grant a continuance "is in the sound discretion of the [trial] judge." *Leonard v. Strong*, 2 Mass. App. Ct. 467, 469 (1974). *Beninati v. Beninati*, 18 Mass. App. Ct. 529, 534 (1984). A trial judge is usually in the best position to assess a situation as it arises. This matter was a moderately complicated case, involving an uncooperative spouse. As the facts began to unravel during the trial, it should have become clear to the judge that Denise was not able to cope with the trial, and that she would need help. For example, to identify and pursue assets would require sophisticated investigative skills. Her situation was not of her own making. Compare *Griffith v. Griffith*, 24 Mass. App. Ct. 943, 944 (1987). Although good cause for a continuance has been shown, because of our ruling on the second issue, we need not decide whether to substitute our judgment for that of the trial judge.

2. *The ex parte communication.* On the last day of the trial, the judge noticed two of Samuel's children in the courtroom, and thereupon asked Samuel and Denise to leave in order to discuss a trust fund Samuel had previously established for the children of his first marriage.[10] Denise was not present during the ensuing conversations. The record shows

---

expected to be represented by counsel, as the trial date was "imminent." Denise received a copy of a June 4, 1986, letter from her former counsel to the judge which stated that the case was "scheduled for June 20," but maintained that she did not understand those words to mean that the trial would commence on that date.

[10]The judge noted that there was no reason to disbelieve Samuel's story that he had been, for the most part, unemployed during and after his marriage to Denise, and that he had lived off the proceeds of a one hundred thousand dollar life insurance policy on his first wife's life. Samuel claimed that those funds were held in trust for his five children, but the judge found no documentary evidence to support this claim. The judge further noted that those funds were, effectively, Samuel's property, as his conduct regarding the funds was "totally inconsistent with the duties and obligations of a trustee." For example, Samuel made various loans to people totalling more than twenty thousand dollars, utilizing these proceeds, and also expended eighty thousand dollars on his own business, which failed. The principal of the "trust" was exhausted by 1984.

Samuel and his first wife had established another trust in 1982, with a principal of one hundred thousand dollars, the proceeds of settlement of an

that the judge then engaged in conversations with Samuel's counsel and the guardian ad litem for Naomi about Samuel's misuse of the trust funds. Those conversations involved discussions of whether, in view of Samuel's misuse of them, the trust funds should be treated as such or as Samuel's money and, thus, marital assets. They also involved a discussion of how much child support Samuel could afford to pay for Naomi. It was improper to conduct these conversations in the absence of Denise, and for that matter, Samuel.

By requiring Denise to proceed pro se, the judge was obliged to treat her as he would have her attorney. She had the right to be present, especially where she was not represented by counsel. Specifically, the Code of Judicial Conduct S.J.C. Rule 3:09, Canon 3(A)(4), 382 Mass. 810 (1982), set out in the margin,[11] required, in the circumstances, that Denise have the opportunity to participate in these discussions. The amount and nature of Samuel's assets had direct relevance to his ability to pay support, both that which had previously been ordered and not paid, and prospective provisions for Naomi and, possibly, Denise.

Further, the suggestion by the husband's counsel that Samuel could afford only a certain amount per week for child support, followed closely in time by the judge's ultimate decision to order the very amount suggested as weekly child support, leads us to conclude that the substance of the ex parte communication may have "influenced [the court's] judicial action." S.J.C. Rule 3:09, Canon 3(A)(4). See *Olsson* v. *Waite*, 373 Mass. 517, 533 (1977) ("judicial decision brought about by ex parte communications with the judge has no place in our adversary system"). Compare *Cormier* v. *Carty*, 381 Mass. 234, 238 (1980).

---

automobile accident case involving three of their children and themselves. The principal of that trust was exhausted by 1983.

[11]"A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law. He should not permit private interviews, arguments or communications designed to influence his judicial action, where interests to be affected thereby are not represented before him, except in cases where provision is made by law for ex parte application." S.J.C. Rule 3:09, Canon 3(A)(4).

Although the wife, pro se, has asked us to determine the exact nature of the husband's assets in order to set child support, we decline to do so.[12] Accordingly, those provisions of the judgment with respect to alimony and child support are vacated. The case is remanded to the Probate Court for further proceedings, which shall include the matter of attorney's fees and costs.

*So ordered.*

---

[12]On appeal, Denise has submitted a list of Samuel's alleged assets. Seventeen separate items are listed, with a total value of $1,630,000. The appropriate forum to consider that material is the Probate Court.