DONNA J. WILLIAMS *vs.* DONALD P. MASSA.

Norfolk. March 10, 2000. - May 25, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, & SPINA, JJ.

*Divorce and Separation,* Division of property, Alimony, Child support, Attorney's fees, Child custody.

In a divorce action, the judge properly considered the factors enumerated in G. L. c. 208, § 34, in ruling that there were no special circumstances that would justify an assignment to the wife of the husband's inherited or gifted property, in light of other jointly produced assets [624-626], and properly within her discretion awarded the husband his inherited and gifted assets and awarded the wife the bulk of the jointly produced assets [626-627].

In a divorce action, the judge properly awarded certain inherited trust assets to the husband [627]; properly excluded certain of the husband's contingent remainder trust interests from the marital estate [628-629]; and properly imputed an estimated capital gains tax in order to assign a more accurate value to certain assets [629-630].

In a divorce action, the judge did not abuse her discretion in making an equitable division of the marital assets based on her consideration of all relevant factors set forth in G. L. c. 208, § 34, and based on her conclusion that the husband's contributions to the marital partnership greatly exceeded those of the wife. [630-633]

There was no merit to a claim by the wife in a divorce proceeding that the judge's orders distributing marital property reflected gender bias. [633]

In a divorce action, there was no error or abuse of discretion in the judge's award of alimony and child support. [633-635]

In a divorce action, there was no merit to the wife's assertion that the judge's failure to award her attorney's fees amounted to an abuse of discretion. [635]

In a divorce action, any changes in the child custody order should be made pursuant to a complaint for modification under G. L. c. 208, § 28. [636-637]

COMPLAINT for divorce filed in the Norfolk Division of the Probate and Family Court Department on December 17, 1993.

The case was heard by *Eileen M. Shaevel,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Barbara F. Wand* (*Karen Tosh* with her) for the plaintiff.

*Roberta F. Benjamin* for the defendant.

*Stacey L. Cushner*, for The Women's Bar Association of Massachusetts, amicus curiae, submitted a brief.

GREANEY, J. This case involves divorce proceedings between Donna J. Williams (wife) and Donald P. Massa (husband). The wife appeals from the amended judgment of divorce and the orders on her posttrial motions. She argues that the judge erred (1) in the distribution of certain inherited and gifted assets of the husband; (2) in the property division that was contrary to the evidence and plainly wrong and excessive; (3) by failing to order sufficient alimony and child support; (4) by declining to award her attorney's fees; and (5) by the arrangement made for custody of the children. The wife concludes that she is entitled to a new trial on all issues. We transferred the case to this court on our own motion. We conclude that the judge's orders regarding property division, alimony and child support, and attorney's fees were proper, but that part of the judge's order concerning custody of the children must be modified. Accordingly, we affirm the amended judgment as to the property division, alimony and child support, and attorney's fees. We also affirm the judgment as to joint legal custody. We vacate that part of the order allowing for future changes in custody on motion of either party, and direct, instead, that any change occur only by way of a complaint for modification.

The judge filed a lengthy decision in which she considered all relevant factors as stated in G. L. c. 208, § 34. We summarize the judge's findings. The parties were married on June 8, 1974. They have two children, a daughter, born on April 5, 1980, and a son, born on September 30, 1985. Both children have learning disabilities as well as emotional problems. The parties themselves are in good health, although the wife manifests some emotional instability, and the husband has asthma and has had severe attention deficit disorder. The parties enjoyed a comfortable middle-class lifestyle during the marriage, residing in an oceanfront, fifteen-room residence in Cohasset that they had extensively renovated. They provided the children with tutors, therapy, and enrichment programs to address the children's special needs. The family ate out occasionally and took family vacations several times a year. The wife shopped recreationally and continually, acquiring large amounts of goods and products.

Since 1976, the husband has been chief executive officer and president of Massa Products Corporation, a small, closely held family business founded by his father fifty years ago. After their marriage, the wife was employed at Massa Products Corporation until the birth of the parties' first child. Since then, she has not been employed outside the home. The wife has skills as a graphic designer and is a talented painter. She is employable in the field of graphic design and in art-related work, but her employability is limited by her years away from her vocation. The parties separated on or about October 4, 1993. At the time of trial, the parties' daughter resided exclusively with the wife and had no contact with the husband. Their son divided his time equally between his parents' homes.

The judge divided the marital assets into three categories: (1) noninherited assets, valued at $1,950,155, which included the marital home, valued at $892,000, and a ski condominium unit, valued at $175,000, as well as personal property, vacation time-share weeks, the husband's pension, individual retirement accounts for both parties, and various stocks and bonds owned jointly and individually; (2) gifted assets, valued at $478,195, which included stocks and bonds acquired by the husband prior to the marriage as gifts from his parents; and (3) inherited assets, valued at $2,246,999, which included the husband's interest in five separate family trusts, described below.[1] The valuation of real estate in two of the trusts, Stoneleigh and Stoneleigh II, reflected a projected capital gains tax that the judge applied in order to determine a more accurate value for those assets. The judge found that the assets of these trusts historically had not been traded and had been used by the family as a stream of income with minimal invasions of principal. The judge further

---

[1] The husband and his two siblings are the beneficiaries of four trusts, and the husband's one-third interest in each is valued as follows: (1) Stoneleigh Trust, valued at $1,218,315, which includes property at 280 Lincoln Street in Hingham, as well as accrued rent, stock and bond portfolios, and cash; (2) Stoneleigh II Trust, valued at $105,753, which consists solely of property at 373 Atlantic Avenue in Cohasset; (3) Frank Massa Irrevocable Trust and (4) Frank Massa Trust, which were established by the husband's parents to preserve principal, valued at $493,333. (These two trusts represent a total value of $1,480,000 which, because neither of his siblings is married or is likely to have children, the husband expects will pass to the parties' children.) In addition, the judge listed as an inherited asset the Donald P. Massa Trust, valued at $425,598, which includes the husband's one-third interest in Massa Products Corporation, his one-third interest in various patents of his deceased father and brother, cash, and securities.

found that the basis of the trust portfolios was low, and there would be significant capital gains tax implications if the trusts were liquidated.

The judge assessed the husband's liabilities at $45,000 in rent owed to the Stoneleigh II Trust, and the wife's at $128,107, which included $120,000 in attorney's fees and $7,598 in credit card debt. The judge assessed the wife's needs at $6,000 per month, for which she will require contribution from the husband, and the husband's needs, including his support obligations, at $17,831 per month. In the future, the husband has the opportunity for future acquisition of capital assets and income through his employment and in a contingent remainder interest of two-thirds of the Frank Massa Trust and the Frank Massa Irrevocable Trust. The wife has a more limited opportunity to acquire future capital assets and income, depending on the investment of her assets and her ability to earn money through employment in her former field.

The judge assessed the conduct and contribution of the parties as follows. The husband contributed all of his income, earned and unearned, to the marital estate during the marriage, and the wife contributed her earned income to the marriage before the birth of the first child in 1980. The husband invested and managed all of the parties' money, and he was responsible for all accountings and tax returns. While the wife on occasion recorded dividend and interest payments in ledger books, she made no contribution to the husband's business or any of the various trusts in which the husband has an interest. The wife's major contribution to the marital estate was her design assistance and her overseeing (with the husband) of the substantial renovations to the family home.

During the course of the marriage, the husband was supportive of the wife, preparing her lunch and dinner on a daily basis, assisting in substantial ways as a homemaker and with child care. The wife was occasionally supportive of the husband, but was insensitive to his time commitments as the primary wage earner, as evidenced by her failure to relieve him of homemaking functions she was capable of providing and for which she could have obtained help. The judge found that the husband did virtually all food shopping for the household. On most days, he would return home at lunchtime and prepare both his lunch and lunch for the wife. Each evening, he would return from work, set the dinner table, prepare the family dinner, and,

after cleaning up after dinner, would help the children with homework. The husband was also responsible for heavy cleaning chores, routine yard maintenance, taking the trash to the dump, and for the daily feeding of the wife's many cats. The wife, who was not employed outside of the home after the birth of the children, was responsible for laundry and for running the dishes through the dishwasher and putting them away. These jobs were seldom done in a consistent manner. The wife was also responsible for cleaning the cats' litter boxes, which she did inconsistently. As a result of the wife's over-all neglect, the marital home was untidy, cluttered with mounds of laundry, every available surface heaped with items recently purchased by the wife, and the "reek of cat urine pervad[ed] the home." The wife was responsible for purchasing the family clothes and gifts, and for decorating the home for holidays.

The wife was primarily responsible for child care during the children's early years, but as the children grew older, the husband increasingly became involved with their routine care. The husband was essential in obtaining appropriate services for both children's special needs. While the wife did more routine car transportation, the husband was equally involved in scheduling and attending meetings with treating professionals around the children's unique issues and working with school personnel. The husband, more than the wife, engaged in specific one-on-one athletic and recreational activities with each child.

The daughter, who was fifteen years old at the time of the trial, has a history of serious learning disabilities and special needs, as well as serious emotional problems, and was hospitalized in 1993 for loss of control and suicidal tendencies. Although she enjoyed a close relationship with her father prior to the litigation, she had chosen to ally with her mother against her father in the present highly charged conflict. The son, who was nine years old at the time of the trial, also has significant learning disabilities and special educational needs.

The judge found that the wife, who has been involved in individual therapy for a number of years, continues to manifest behaviors that are profoundly worrisome in her role as a parent. She has limited insight into the children's special needs and her interpersonal skills, and often succeeds in alienating treating professionals and school personnel. The husband, on the other hand, has a realistic view of the over-all emotional and educational needs of the children and has been pivotal in secur-

ing required services and effectively acting as an advocate for their needs. He has a unique and sensitive insight into their special needs, given his own lifelong struggle with attention deficit disorder. In contrast to the wife, the husband understands the importance to the children of having both parents play a major role in their lives, does not seek to diminish the wife's significance as a parent, and has engaged in efforts to work cooperatively with her, all with limited success. Throughout the course of their litigation, the wife was instrumental in effecting a breakdown in the relationship between the husband and the daughter and has attempted to disrupt the relationship between the husband and the son.[2]

Based on these findings, the judge awarded the husband his inherited and gifted assets and awarded the wife seventy-four per cent of the other assets, including the marital home, which was valued at $892,000, and was not encumbered. She awarded the wife alimony of $4,500 per month and child support of $2,200 per month. She denied the wife's request for attorney's fees. She declared that the parties will have joint legal custody of the two children, shared physical custody of the son, and that the wife will have sole physical custody of the daughter, until relations between the husband and the daughter have improved. To that end, the judge ordered weekly therapy sessions between the husband and the daughter. The judge also appointed a guardian ad litem to monitor the therapy sessions and to arbitrate any disputes that arise between the parents as to educational, medical, or therapeutic care of the two children. The judge further ordered that, in the event that parental decision-making becomes too conflicted or requires significant involvement by the guardian ad litem, on a motion of either party, a hearing will be held to determine whether sole legal custody will be placed with the father.

The judge carefully set forth her rationale in support of her orders. We shall state the rationale as we discuss the wife's arguments on each of the contested orders.

1. The wife asserts that the judge made several errors in the

[2]The judge further found that efforts by the guardian ad litem to establish a rapprochement between the husband and the daughter had been unsuccessful, in part as a result of the wife's resistance. While the situation for the daughter of having no contact with her father, and living exclusively in the care and custody of her mother, was not in her best interest, given her age, the judge observed that any court mandate for a different residential schedule would be unlikely to meet with success.

distribution of the husband's inherited and gifted assets. First, the wife claims that the judge improperly excluded the gifted and inherited assets from equitable distribution. She bases this claim on the judge's observation that she found "no special circumstances which would justify an assignment to the wife of the husband's inherited or gifted property." Because G. L. c. 208, § 34, defines the scope of the court's discretion in property division, and a judge's consideration of factors not enumerated in § 34 may constitute an error of law, the wife asserts that the judge's use of a "special circumstances" test requires reversal. We disagree.

The judge's rationale as to the assets in question is as follows. A large portion of the husband's inherited and gifted assets predate the marriage. The husband managed these assets, including the family business, made all investment decisions, and kept them separate from the other assets acquired during the marriage. The income from the trust assets was used by the family and was included in the husband's income for purposes of calculating a support order. With regard to the business, the husband was, and has been, the managing chief executive officer for more than twenty-five years. Although the wife worked for the company for three and one-half years, she was compensated for her work, and she made no significant contributions to the business. Thus, the judge stated that she found "no special circumstances which would justify an assignment to the wife of the husband's inherited or gifted property, especially when there are other jointly produced assets."

General Laws c. 208, § 34, allows a judge to "assign to either husband or wife all or any part of the estate of the other." Under our law, a party's "estate" includes all property to which a party holds title, however acquired. See *Drapek* v. *Drapek*, 399 Mass. 240, 243 (1987). There is no question that the husband's stocks and bonds that were gifts from his parents, and his interests in family trusts, inherited from his parents, comprised part of the marital estate for purposes of possible division under G. L. c. 208, § 34. See *Rice* v. *Rice*, 372 Mass. 398, 400 (1977); *Earle* v. *Earle*, 13 Mass. App. Ct. 1062, 1063 (1982). The judge clearly knew the law on the point because she listed these assets in her findings as part of the marital estate.

The judge's statement, that she found "no special circumstances" which would justify an assignment to the wife of the

husband's inherited or gifted property, shows neither that she excluded those assets from the marital estate, nor that she imposed an improper test for the equitable division of those assets. The judge's words merely indicate that, after her consideration of all the factors enumerated in § 34, including her assessment of the source of the inherited and gifted assets and the parties' respective contributions to them, those assets should remain the property of the husband, especially in light of the judge's finding that there were other jointly produced assets to assign to the wife.[3]

We reject the wife's assertion that the judge gave excessive weight to the original source of the husband's inherited and gifted assets. Unlike several other States that have enacted statutes governing the allocation of inherited or gifted assets in a divorce proceeding,[4] Massachusetts has no hard and fast rules on when such an allocation is appropriate. Once the judge included these assets as part of the marital estate, she had broad discretion to determine how to divide the entire estate equitably, see *Rice* v. *Rice, supra* at 401, including discretion not to divide the inherited and gifted assets between the parties. See *Bacon* v. *Bacon,* 26 Mass. App. Ct. 117, 118 (1988). As will be discussed in Part 2 of this opinion, an equitable, rather than an equal, division of property is the ultimate goal of G. L. c. 208, § 34. To that end, a judge is required to consider the respective contributions of the parties to the marital partnership, and a disparity in contributions may be reflected in the distribution of the inherited and gifted assets. See *id.* at 118-119. A judge may

---

[3]The wife's proposed property division, submitted before trial, also allocated these assets specifically to the husband, but awarded her a cash payment of $1,045,749, in order to effect an equal division of the marital estate.

[4]Community property States uniformly characterize gifted or inherited assets as "separate," as opposed to "community," property. See, e.g., Cal. Const. art. 1, § 21 (1983); Tex. Fam. Code Ann. § 5.001 (West 1998). Some common-law jurisdictions also by statute separate inherited or gifted assets from the divisible marital estate. See, e.g., Del. Code Ann. tit. 13, § 1513(b)(1) (Michie 1999); Fla. Stat. Ann. § 61.075(5)(b)(2) (West 1997); Me. Rev. Stat. Ann. tit. 19, § 722-A (West 1981 & Supp. 1996); N.Y. Dom. Rel. Law § 236(B)(1)(d)(1) (McKinney 1999); R.I. Gen. Laws § 15-5-16.1 (1996). Other States, like Massachusetts, include gifted or inherited assets in the marital estate, which a judge has discretion to divide or not, after an assessment of factors set out by the governing statute. See, e.g., *Jackson* v. *Jackson,* 17 Conn. App. 431, 432-433 & n.1 (1989); *Wallace* v. *Wallace,* 714 N.E.2d 774, 779-780 (Ind. Ct. App. 1999); *Weeks* v. *Weeks,* 124 N.H. 252, 255-256 (1983); *Daitchman* v. *Daitchman,* 145 Vt. 145, 151-152 (1984).

also consider, as the judge clearly did in this case, the source of the assets, each parties' role in managing the assets, and whether the assets in question had been kept separate or commingled with the couple's jointly owned property.[5] In light of these considerations, and in light of her conclusion that the husband's contributions to the marital estate greatly exceeded those of his wife, the judge's determination to award the inherited and gifted assets to the husband, while awarding the wife the bulk of the jointly produced assets, was well within her discretion.

In addition, the wife claims that the judge made the following errors in the characterization and valuation of these assets: (a) improperly characterized the Donald P. Massa Trust as an inherited asset; (b) erroneously excluded the husband's contingent remainder interest in the Frank Massa Trust and the Frank Massa Irrevocable Trust from the marital estate; and (c) erroneously took judicial notice of the precise amount of unrealized capital gains and income tax with respect to certain inherited property of the husband. She claims that these errors significantly compounded the impact of the court's exclusion of these assets from equitable division. We disagree.

(a) In view of the husband's testimony that he established the Donald P. Massa Trust in 1984, that trust was not properly characterized as an inherited asset. This error is not, however, significant. The trust, although technically not inherited, consists primarily of assets that were acquired by the husband through his family, including the husband's one-third interest in the family business, income from patents owned by his deceased father and brother, and securities purchased with income from the Stoneleigh Trust and the sale of inherited patents. Thus, the same consideration of § 34 factors that resulted in the judge's awarding the other trusts to the husband, applied to this trust as well. The judge assigned this trust to the husband, not because the husband's financial statement listed it as an inherited asset, but because she found (i) that the husband managed this asset and kept it separate from the other assets acquired during the marriage; and (ii) that the wife had made no significant contribution to the husband's business.

---

[5]The judge found that the parties used income from the trusts as a stream of income, yet made no corresponding finding that the parties also occasionally used trust distributions for family purposes. We do not consider this important, in light of the correctness of the judge's conclusion that the principal of the trusts remained largely untouched over the years.

(b) The judge properly did not include the husband's contingent remainder interests in the Frank Massa Trust and the Frank Massa Irrevocable Trust as part of the marital estate. This court is not bound by traditional concepts of title or property in considering what constitutes a party's "estate" for purposes of § 34, and we have held a number of intangible property interests to be subject to division. See *Lauricella* v. *Lauricella*, 409 Mass. 211, 214 (1991), and cases cited. When the future acquisition of assets is fairly certain, and current valuation possible, the assets may be considered for assignment under § 34. Compare *Dewan* v. *Dewan*, 399 Mass. 754, 757 (1987) (nonvested pension rights part of marital estate), with *Drapek* v. *Drapek*, 399 Mass. 240, 244 (1987) (potential future earnings not marital asset). Thus, a vested remainder interest in a trust is a sufficient property interest for consideration in connection with a property division under § 34. See *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 372 (1985). Whether a contingent remainder interest also constitutes part of the marital estate has yet to be squarely addressed by a Massachusetts court.[6]

The husband's contingent remainder interests in the two trusts were not clearly fixed and enforceable property rights. See *Hanify* v. *Hanify*, 403 Mass. 184, 193 (1988) (Liacos, J., concurring in part and dissenting in part) ("A final and equitable property division under § 34 should not be based on speculative assets"). These interests were mere expectancies, comparable to a future inheritance, which are not sufficient property interests to be considered a part of the marital estate. See *Davidson* v. *Davidson, supra* at 374. Practical difficulties, although perhaps not unsurmountable, presented by a division of property that the husband does not have, weigh heavily in our decision. Neither the present assignment of a percentage of a contingent interest's value, nor a future award on an "if and when" basis, avoids administrative hardships inherent in the valuation of expectant interests or in the requirement of continued court supervision. See *Dewan* v. *Dewan, supra* at 757. The judge cor-

---

[6]Other States differ on whether interests subject to contingencies may be equitably distributed, but the prevailing view is that vested interests are to be treated differently from speculative or contingent interests. See *Hanify* v. *Hanify*, 403 Mass. 184, 192 n.1 (1988) (Liacos, J., concurring in part and dissenting in part); *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 372 n.11 (1985). But see *Bentson* v. *Bentson*, 61 Or. App. 282, 284-285 (1983) (remainder interests in trust, whether vested or contingent, subject to division as marital property).

rectly considered these expectancies under the § 34 criterion of "opportunity of each for future acquisition of capital assets and income" in determining what disposition to make of the property that was subject to division. *Davidson* v. *Davidson, supra* at 374.

(c) The judge took judicial notice of the fact that capital gains would be incurred on the sale of certain assets, but not, as the wife asserts, of the precise amount of capital gains taxes that might have to be paid. The judge valued the husband's one-third share of the real estate at 280 Lincoln Street in Hingham at $341,867 (which included a projected capital gains tax of $108,133), and the husband's one-third share of the real estate at 373 Atlantic Avenue in Cohasset at $105,753 (including projected capital gains tax of $168,240 on the entire property, amounting to $56,080 as the husband's share). The wife argues that this valuation was in error because (i) there was no competent testimony as to the proper valuation of taxes; (ii) there was no testimony regarding the necessity of sale; and (iii) the judge failed to assess comparable tax implications for property assigned to the wife. The wife concludes from this that the judge underestimated the value of the properties, and, in so doing, understated the disproportionate division of the marital estate. We do not agree.

The judge properly imputed an estimated capital gains tax in order to assign a more accurate value to those assets. She did not need testimony regarding the necessity of sale. See *Fechtor* v. *Fechtor*, 26 Mass. App. Ct. 859, 866 (1989). The judge's determination of valuation will stand unless clearly erroneous. *Id.* at 863. The husband testified concerning his applicable tax rates, and presented a chalk, which was considered in place of testimony regarding basis, and on which he was cross-examined.[7] The wife made no objection at trial, and may not now claim that this testimony was not competent. See *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 611 n.3 (1987). In the absence of

---

[7]The husband testified that his applicable capital gains tax rate is forty-eight per cent. When the wife's counsel questioned, "Would it surprise you to know that the capital gains rate for federal purposes is limited to twenty-eight per cent," the husband expressed surprise. This line of questioning does not constitute evidence that the husband's appropriate tax rate is twenty-eight per cent for Federal purposes and six per cent for State purposes. The wife's assertion that the rate adopted by the judge is incorrect lacks convincing support in the record. For the same reason, we reject the wife's claim that the tax valuations should have been made using a stepped-up basis.

expert testimony on the subject, which would have been appropriate and undoubtedly helpful to the judge, we cannot say that the judge's valuation of the real estate, which is apparently based on the husband's figures, is in error.[8]

A comparison of the wife's proposed figures, taken from her "corrected" version of the husband's valuations, submitted with her proposed rationale, that assess the husband's one-third share in the Lincoln Street property at $315,701, and in the Atlantic Avenue property at $119,065, and the judge's valuations of $341,867 and $105,753, respectively, shows an over-all differential of $12,854, or less than one per cent of the combined value of the two trusts. This difference, even if based on an incorrect tax calculation, is insignificant. See *Drapek* v. *Drapek*, *supra* at 247. Had the judge adopted the wife's figures, the division of assets would undoubtedly have been the same, because the judge had determined to award these assets to the husband and was not required to achieve financial parity between the parties. See *Zatsky* v. *Zatsky*, 36 Mass. App. Ct. 7, 15 (1994). Finally, the judge's failure to consider tax consequences in her valuation of securities assigned to the wife was not plainly wrong, because the wife presented no evidence on that subject. See *Rice* v. *Rice*, 372 Mass. 398, 402 n.4 (1977); *Fechtor* v. *Fechtor*, *supra* at 866.

2. Next, the wife challenges the fairness of the judge's equitable division, claiming that the award of less than twenty-five per cent to her and over seventy-five per cent to the husband amounted to an abuse of discretion. In support of her challenge, the wife asserts that the judge made findings with respect to the parties' respective contributions to the marital partnership that are not supported by the evidence or that do not support the judgment. The wife further asserts that the judge's failure to give appropriate weight to the wife's role as a homemaker and as a caretaker of the children, while giving inappropriate weight to the husband's "super-contribution," reflects a gender bias and amounts to an abuse of discretion. We do not agree.

After a detailed examination of the specific conduct of the

---

[8]Although the wife does not complain on this point, the judge did incorrectly value the husband's one-third share of $660,000 in accrued rent due to the Stoneleigh Trust at $105,600. This figure, based on the husband's proposed capital gains tax rate of forty-eight per cent applied to the husband's share of $220,000, should be $114,400. The difference in value is de minimis, just .7 per cent of the value of the Stoneleigh Trust.

parties, the judge concluded that the husband's contributions to the marital partnership greatly exceeded those of the wife. She reasoned that he was not only the primary wage-earner, but he also "assumed much of the homemaking and child-related responsibilities even though he had a full-time job outside of the home." The judge found that the wife, on the other hand, "inexplicably avoided the household tasks she was intended to do." While the wife did primarily care for the children in the earlier years, the husband also had substantial involvement in obtaining for them the services that they needed to address their special needs. The judge stated: "In sum, this case is unusual in that the parties were not partners in the marital enterprise in the traditional sense of assuming the roles of wage-earner and homemaker. Through credible evidence I find that the greater burden or responsibility fell to the husband throughout the marriage. Consequently, I have made an equitable but disproportionate division of all of the marital assets."

As has been discussed, a judge has considerable discretion in making an equitable division of property. As long as the judge's findings show that all relevant factors in § 34 were considered, and the reasons for the judge's conclusion are apparent and flow rationally from the findings and rulings, a judge's determination on the equitable division of marital property will not be disturbed. See *Bowring* v. *Reid*, 399 Mass. 265, 267 (1987). There is no mathematical formula to determine what weight a judge should accord to any of the factors in § 34. See *Rice* v. *Rice*, *supra* at 400-401. A judgment may be vacated only where the award is plainly wrong and excessive. See *Redding* v. *Redding*, 398 Mass. 102, 107 (1986).

The judge made findings based on careful consideration of the § 34 factors. Although we acknowledge that some technical mistakes may have been made with respect to the conduct of the parties,[9] the mistakes are not of material significance because they do not alter the larger picture of the marriage, in which the

---

[9]The wife claims the following findings were in error: (1) "The wife made no contribution to the husband's business" (an earlier finding acknowledged the wife's full-time work for the business during the early years of the marriage and the judge later stated "no significant contributions"); (2) "the wife made no contribution to the . . . trusts" (the same finding recognized that "on occasion the wife recorded dividend and interest income payments in ledger books"); (3) "the husband . . . provid[ed] all financial support" (another finding clearly acknowledged that the wife had worked full time up until the birth of their first child, and contributed her salary to the marriage); (4) the

judge clearly found, on the evidence she determined to be cred-
ible, that the contributions of the partners, both economic and
noneconomic, were grossly out of balance.[10] This determination,
while disappointing to the wife, is fully supported by the judge's
findings and the evidence.

"The parties' respective contributions to the marital partner-
ship remain the touchstone of an equitable division of the
marital estate." *Moriarty* v. *Stone*, 41 Mass. App. Ct. 151, 157
(1996). The purpose of the division of marital property is to
recognize and equitably recompense the parties' respective
contributions to the marital partnership. See *Heacock* v. *Hea-
cock*, 402 Mass. 21, 24 (1988). "[C]ontributions to the marital
partnership encompass differing considerations and . . . an
imbalance in contributions may have an effect on the distribu-
tion." *Bacon* v. *Bacon*, 26 Mass. App. Ct. 117, 118-119 (1988).[11]
The judge properly considered the factors listed in § 34 and
concluded that the husband contributed more to the financial
side of the marriage, as well as to the family home.[12] The
judge's equitable division of property flowed rationally from

husband "orchestrated" extended family get-togethers at holiday times (despite
the husband's testimony to the wife's involvement); (5) "the husband
. . . paid all of the bills" (when the husband testified that the wife paid the
family bills); (6) "[the husband] was responsible for all meal preparation"
(the husband testified that he made breakfast for himself and his daughter,
lunch for himself and his wife, and dinner for the family, and there was no
evidence that the wife made any meals), and (7) "[the husband] would nightly
hand wash his own underwear to ensure that he would have clean undergar-
ments to wear to work the next day" (that the wife correctly points out ap-
pears nowhere in the evidence).

[10]As a practical matter, due to time constraints, Probate and Family Court
judges may sometimes adopt verbatim portions of a party's proposed findings.
The fact that several of the judge's findings appear to be directly taken from
the husband's proposed findings does not establish, as the wife asserts, that
the judge's findings and judgment were not based on an independent review
of the evidence. The judge's decision is clearly the product of her own
conscientious consideration of the evidence and the equities.

[11]The detail in the judge's findings concerning the husband's responsibili-
ties around the home, and corresponding lack of findings regarding the wife's
contributions, does not show that the judge lacked impartiality in assessing the
contribution of the parties, but rather reflects the judge's failure to credit the
wife's testimony as it related to the extent of her involvement in that process.
We note that the guardian ad litem confirmed the major points of the husband's
testimony and also commented on the wife's impaired perception of reality.

[12]The judge's finding that "the parties were not partners in the marital
enterprise in the traditional sense of assuming the roles of wage-earner and
homemaker" shows only that the judge was cognizant of the principle that a

her determination that the "greater burden or responsibility fell to the husband throughout the marriage," and was well within the bounds of her discretion in this matter.

We also reject the claim, made in so many words by the wife (and also by the amicus, the Women's Bar Association of Massachusetts), that the disputed orders reflect gender bias on the part of the judge. The claim is remarkable, to say the least. We agree that Probate and Family Court judges, making orders for equitable distribution of property and related orders, should not base their dispositions on a minute qualitative examination of the adequacy of the respective spouse's completion of daily chores and activities, or on one spouse's assumption of duties that appear to be outside of stereotypical expectations. So, a husband who likes to, and frequently does, cook should not necessarily be rewarded, nor, similarly, should a wife who neglects from time to time to fold the laundry (or a husband who fails to do the same) be punished.

But this is not what occurred here. As has been explained, the judge found substantial and fundamental failures by the wife throughout the marital partnership. Despite the negative factors on the wife's side of the ledger, the judge nonetheless gave her $1,435,366 of the marital assets and ordered payment to her of an income stream sufficient to enable her, as the judge found, to "maintain the middle income standard of living enjoyed by the parties during the marriage." Our decision cannot logically be said to have a negative impact on women, because it is based on the recognition that justice requires a judge to consider all contributions to the marriage partnership when fashioning an equitable distribution.

3. We next consider the alimony and child support orders. The wife challenges the judge's award of $4,500 per month in

marriage partnership does not rest on financial contributions alone. See *de-Castro* v. *deCastro*, 415 Mass. 787, 795 (1993); *Pare* v. *Pare*, 409 Mass. 292, 297 (1991). That one party elects to stay at home, however, does not automatically entitle that party, in the absence of credible evidence, to be credited with contributions to the home and child care. We agree with the judge's rationale that a party who works outside the home, as well as performs the bulk of "traditional" homemaking and child care responsibilities, may be entitled to a greater portion of the marital assets, if, after a careful consideration of all of the § 34 factors, a judge determines that such a division would be equitable. See *Heins* v. *Ledis*, 422 Mass. 477, 480 (1996) (Legislature adopted gender-neutral principle that marriage is partnership and spouses have mutual obligation to support children and other spouse).

alimony and $2,200 per month in child support, claiming that it is insufficient to allow her to maintain her station in life. The wife asserts that the judge failed to account for various (and expensive) aspects of the family's "upper-middle class life-style," including her monthly "recreational" shopping (which amounts to $6,000 per month alone). The wife further argues that her unchallenged monthly expenses for home maintenance, medical expenses, insurance, and car expenses, together with her $6,000 monthly discretionary credit card expenses (which the judge did not specifically find to be excessive), total over $9,100 per month. She concludes that the judge's findings establishing her needs are internally inconsistent. The wife also states that the judge's assessment of the husband's needs at $17,831 per month allows him to maintain a significantly higher lifestyle. We reject her claims.

The purpose of alimony is to provide adequate support for a spouse who needs it. See *Gottsegen* v. *Gottsegen,* 397 Mass. 617, 623 (1986). General Laws c. 208, § 34, allows a judge broad discretion in considering how much alimony, if any, should be awarded to either spouse. See *Drapek* v. *Drapek, supra* at 243. The judge's rationale in calculating the amount of alimony and child support is as follows. She considered that (i) the wife has no mortgage, while the husband is paying substantial rent for his home; (ii) the husband's over-all carrying costs are greater; (iii) the husband has the son for one-half of the time[13]; (iv) the husband will be paying more of the direct child-related costs; and (v) the assets the wife will receive can generate for her an additional $12,000 to $14,000 yearly in unearned income. After assessing the wife's needs at $6,000 per month, the judge awarded her $6,700 per month, concluding that the wife should be able to maintain the middle income standard of living enjoyed by the parties during the marriage.

The judge specifically found that expenses listed on the wife's financial sheet (totaling $10,901.85 per month) were not supported by the evidence on the family's spending habits,[14] and included many costs for which she will not be responsible. The

---

[13]At the time of appeal, the daughter lived with the husband full time. The husband, however, has not moved for a modification of the child support order due to these changed circumstances.

[14]A review of the record confirms this finding. The wife included, for example: (1) $728 per month for domestic help (when the evidence showed that the wife did not hire domestic help); (2) $650 per month for entertain-

judge was not required to provide the wife with an allowance of $6,000 per month in discretionary credit card purchases, as part of her "station" in life. Although acknowledging that the wife could earn up to $30,000 in her field, the judge expressly did not make the award dependent on her ability or desire to seek outside employment. Cf. *Goldman* v. *Goldman*, 28 Mass. App. Ct. 603, 608-609, 611 (1990). The award allows the wife a yearly income of $80,400, which, when added to the $12,000 to $14,000 unearned income from other assets, undercuts her claim of straitened circumstances. Cf. *Grubert* v. *Grubert*, 20 Mass. App. Ct. 811, 818 (1985). The wife offers no convincing support for her assertion that the husband will enjoy a higher standard of living than she will. In addition to alimony and support payments, the husband bears the costs of medical insurance for the wife and children, as well as $3,250 per month that the judge allowed to rent the home in which he resides (which, should he continue his plan to purchase, will cost him approximately $6,000 per month). The judge's award of alimony and child support payments was entirely within the bounds of discretion.

4. There is no merit in the wife's assertion that the judge's failure to award attorney's fees amounts to an abuse of discretion. With respect to the attorney's fees, the judge considered the wife's financial circumstances and found that the wife had paid her attorneys $26,723 prior to trial and owed them an additional $120,000. The judge found that the wife had access to almost $100,000 in joint marital funds prior to the beginning of litigation, of which she used $15,000 as a retainer and has failed to account for the remainder. The judge further noted that the wife had availed herself of only $5,000 of the $50,000 that was allocated for her use during litigation, and that the husband had paid the costs of the guardian ad litem, the costs of property appraisals and valuation of the husband's business, and had voluntarily paid a $26,000 construction loan that was outstanding on the marital home. The judge concluded that the wife has liquid assets with which to pay her attorney's fees. The judge's decision not to award attorney's fees was within her discretion.

---

ment and restaurants (when the evidence showed that the family ate out only a few times per month at moderately priced restaurants and usual entertainment was renting videos); and (3) $898.16 per month for the children's activities (at least $528.91 of which either the husband paid or the children were not actually taking).

5. We agree with the wife's claim that the judge's order concerning custody of the children was inappropriate in one respect. The following rationale for the judge's order is clear from her findings on the present and future needs of the children. The wife has limited insight into the children's special needs, and was not, at the time of trial, a positive force in the children's lives.[15] The judge found, based on credible evidence, that the husband "would more likely be able to make appropriate decisions to address the children's special needs."[16] On the other hand, the judge found that both children were deeply allied with their mother, and that she must continue in a significant way in their lives, "despite the worrisome behaviors she exhibits in her parenting." The judge was presented with an alternative arrangement, agreed to by both the husband and the wife, whereby, with the help of a mediator, they would have the opportunity to try joint legal custody, with the caveat that should this arrangement not work out peaceably, either party could move for a hearing (with the understanding that custody then would most likely be given solely to the husband).

A change in a custody judgment, however, should be made pursuant to a complaint for modification under G. L. c. 208, § 28. If the judge felt that joint legal custody put the children at risk, or was not in their best interests, because of the wife's worrisome parenting behavior, then the judge should have ordered sole legal custody to the father. She did not have discretion to fashion, even with the agreement of both parents, an alternative plan. Accordingly, we amend the order on custody to

---

[15]The judge made the following findings concerning the wife's behavior. During the pendency of the litigation, the son, encouraged by his mother, reported being sexually molested by his father's coworker and girl friend. Notwithstanding a thorough investigation that found no evidence that any molestation or abuse of any sort occurred, the wife continues to believe that the son was molested by the husband's friend. Pressure exerted on the son by the wife, in relation to this incident, led to his psychiatric hospitalization in June of 1994. The wife had also exhibited instances of paranoia, accusing the husband, during the course of the proceedings, of obtaining duplicate keys to her home, sneaking into the home in the middle of the night, rifling through her possessions, and tampering with her computer.

[16]The judge found that the husband, unlike the wife, was an effective advocate for the children in dealing with the professionals and school personnel who service their special needs. The judge attributed the breakdown in communications between the husband and the daughter to the wife's negative influence. At the time of appeal, the daughter was living with her father.

require the filing of a complaint for modification by the party who seeks to revise the order.

6. Paragraph 8 of the judgment for divorce nisi dated December 11, 1995, is modified by striking therefrom the word "motion" and substituting in its place the words "complaint for modification." The amended judgment of divorce is otherwise affirmed.

*So ordered.*