# E. H. *vs.* S. H.

No. 01-P-180.

Norfolk. January 22, 2003. - October 16, 2003.

Present: JACOBS, BERRY, & KAFKER, JJ.

*Divorce and Separation,* Attorney's fees. *Practice, Civil,* Assistance of counsel, Continuance.

In a divorce action, the wife's motion for a new trial, based on the failure of her interrelated motions, one for the lifting of a freeze on spending so that the wife could take out a loan to retain successor counsel, and associated motions to continue the trial when she was unable to hire a new attorney, was meritorious, where the record demonstrated the wife's dilligent efforts to obtain new counsel following her attorney's withdrawal three months before trial; where, during the pendency of underlying motions, the husband had not made complete disclosures concerning a substantial measure of assets associated with his family's wealth; and where such incomplete information resulted in litigation disadvantages and unfair prejudice to the wife in having to proceed on sophisticated and complicated issues at trial without legal representation. [593-598]

COMPLAINT for divorce filed in the Norfolk Division of the Probate and Family Court Department on August 10, 1998.

The case was heard by *John M. Smoot,* J., and a motion for a new trial, filed on February 23, 2000, was also heard by him.

*Dana Alan Curhan* for the defendant.

*Philip D. Woodbury* for the plaintiff.

BERRY, J. The wife appeals from an amended judgment of divorce nisi, G. L. c. 208, § 1B, and from the denial of her motion for a new trial. The issue, which we address herein, is procedural in nature[1] and involves the wife's appeal from the denial of her interrelated motions, one for the lifting of a freeze on spending so that the wife could take out a loan to retain suc-

---

[1] The wife also challenges the decree per se in respect to the substantive merits of the alimony and property disposition under G. L. c. 208, § 34. (The marriage was eight years in duration. There were no children of the marri-

cessor counsel, and associated motions to continue the trial when the wife was unable to hire a new attorney, all of which are presented as predicates for the new trial motion.[2,3] The record documents diligent efforts on the wife's part to obtain new counsel following the withdrawal of her attorney three months before trial[4] and also demonstrates the contributing problem the wife encountered because she did not have available funds to pay an attorney and provide a retainer as requested by certain attorneys consulted regarding representation. (The husband had been previously ordered to contribute $5,000 for attorney's fees,

age. The wife had a son from a prior marriage.) In particular, this part of the appeal challenges the provisions in the decree (1) denying the wife alimony and (2) providing that the wife would be permitted to keep the marital home subject to the alternative options that the wife either immediately buy out the husband's forty percent interest for $120,000 plus six percent interest back to the date of judgment or sell the house when the wife's son (from another marriage) reaches nineteen years of age or ends schooling and, upon such a sale, pay the husband his share of the proceeds. The wife submits that, without alimony and without other funds in the asset distribution, she would be rendered unable to pay back $120,000, plus interest, to the husband and ultimately would have to give up the marital home, which then would not, in reality, be an asset truly allocated to her, and notes that the judge found that "[t]he wife is marginally able to provide for her own needs and the needs of her child . . . ." The point has weight. However, because resolution of the procedural issue addressed herein will result in a new trial, we need not further address these substantive issues.

[2] The pertinent dates are as follows. Following a pretrial conference, a Probate Court judge set a September 9, 1999, trial date. On June 18, 1999, the wife's counsel was granted leave to withdraw, citing irreconcilable differences. At this time, discovery had not been completed. On September 2, 1999, the wife filed a pro se motion for a continuance, documenting her attempts and failure to retain new counsel. The wife provided supporting information that the primary difficulty she was encountering was that she had no funds to pay counsel — including that certain of the attorneys whom the wife had consulted required retainers of $15,000, which she was unable to pay, particularly in light of the freeze on assets. On the same day, the motion was denied by the motion judge who had presided over the June 18 hearing. On September 13, 1999, the day trial began, the trial judge (who was not the motion judge) allowed the wife's motion to reconsider and denied her motion for a continuance. The wife proceeded pro se.

[3] We note that, in contrast to the wife's situation, the husband filed a motion for an advance of attorneys' fees based on "personal trauma" he was experiencing because of the wife's refusal to settle the matter. Notwithstanding the denial of relief to the wife from the freeze on spending, the judge allowed the husband to "access his own assets to use for counsel fees and expert fees."

[4] There had not been a previous request for a continuance filed.

but that amount had been expended.)

Of significance to our decision is that, at the time the motion judge and the trial judge were called upon to rule on the wife's counsel-related funding motion and motions for a trial continuance, the husband had not made complete disclosures concerning a substantial measure of assets associated with his family's wealth, including but not limited to the extent of the husband's interest in his parents' estate plan, the details of his interest in a real estate trust, and the value of the principal of a family trust in which he held a remainder interest. All of these were tied to great wealth in his family (his parents and grandparents were involved in the establishment of the Sheraton Hotel chain), which was on the order of $2.5 million — a figure not disclosed by the husband until the second day of trial. On this issue, following the trial the judge found that "[t]he husband is virtually certain to inherit substantial assets upon the death of his parents." As a result of the incompleteness of the information in the husband's pretrial filings, the litigation disadvantages and potential prejudice to the wife in having to proceed to trial without legal representation may not have been readily apparent in the record before the judges who reviewed the subject motions for continuance of the trial.

To the contrary, the limited, and incomplete, information set forth in the husband's pretrial financial statements — including what was disclosed in the financial statements filed as of the date of the first hearing on the continuance motion and the commencement of trial (when the continuance request was renewed) — portrayed the financial status from the husband's side as less complicated than it actually was. The husband's financial statements masked complex questions of fact and law revolving around the husband's financial affairs, and this, in turn, may have masked the attendant need on the part of the wife for legal counsel. Counsel for the wife could have developed a trial strategy (and demanded additional discovery of the husband as necessary, to force fuller disclosures) to explore the complex issues of valuation of the property and the trusts as well as the husband's parents' assets, in order to protect the wife's interests and ensure a fair and equitable property distribution in accord with G. L. c. 208, § 34. Instead, the pro se wife was confronted

during trial with issues of such legal complexity and factual significance that even experienced trial counsel (let alone a lay person) would have had difficulty in addressing the accounting aspects of the financial issues, involving the husband's related family trusts, real estate, parents' estate plan, and business transactions.[5,6] The complexity of the husband's financial

---

[5]To illustrate the significance of the gaps in the husband's pretrial disclosures combined with the wife's lack of legal representation: First, it was not until the second day of trial (September 14, 1999) that the husband produced the affidavit (dated June 24, 1999) that estimated his parents' net worth at $2.5 million. The date on the affidavit indicates that it was signed by the husband six days after the wife's counsel withdrew from the case and that, although the affidavit was signed prior to the continuance motion hearings, it was not disclosed prior to those hearings. The husband's late disclosure of his parents' multimillion-dollar assets takes on added hue when it is considered that the husband was a fifty per cent beneficiary of his parents' will and was to take an equal interest in their estate with his sister. On this point, as the judge found, the husband is "virtually certain to inherit substantial assets upon the death of his parents." Second, although the husband had disclosed on his pretrial financial statements that he was a beneficiary of the E.H. Trust 1955, listing the value of his interest as "uncertain," there was no disclosure of the value of the principal, a point significant in this case because of the late filing of the affidavit revealing the husband's parents' assets to be $2.5 million and of the fact the trust principal was generating income, including but, it appears, not limited to the husband's father's share of income in the amount of $2,100 a year (which the father assigned to the husband), suggesting that the size of the principal is not inconsequential. It is likely that, given a fuller picture of the husband's financial background, such an "uncertain" valuation assigned to the trust would have been a productive area for exploration, and a more definite valuation could have been sought through discovery and expert valuation and accounting analysis, had the wife been able to retain counsel and the trial been continued. Third, there appear to be incomplete disclosures and flaws in the husband's zero-summing the value of the realty trust as "none," which raises the question of understatement of value. Fourth, the husband's listing as "minimal" the value of a fifty-percent interest in a lot of real estate in Wellesley appears questionable (he listed the assessed value as $42,000 for 1996 on one statement and $46,500 on a later statement, apparently based on a later assessment; the lot is not large enough to be buildable but could possibly be combined with another lot). An expert opinion proffered by the wife at trial was that the lot, if buildable, would be worth $800,000. On that point, the judge noted that this vacant lot lies next to the home of the parents and that, if joined with land of an abutter (it is not clear whether this is a reference to the parents' land), the lot would be of "significant value." Once again, the details, wherein lies the value, are unclear, as the wife's pro se inquiry into this real estate matter was limited by her inability to frame appropriate questions not subject to oft raised evidentiary objections.

[6]As the trial unfolded, the judge became more aware of the incompleteness

interests, as became apparent at trial and in light of the disclosure of the husband's parents' will and assets, left the pro se wife with the task of cross-examining on sophisticated and complicated accounting methods, asset valuation, and legal probate disposition matters — in the final tally all matters affecting valuation and ultimately the property disposition in the divorce.[7] In the final analysis, we are persuaded that, had the husband revealed the true state and extent of his interests in his family's substantial wealth and financial affairs (rather than "dropping" the information as to his parents' will and assets into the record at trial), sufficient reasons would have been apparent as to why the wife's request for permission to take out a loan to pay for successor counsel and to continue the trial should have been granted.[8]

The need to move a court's docket forward is often compelling, and the allowance, or denial, of a motion for a continuance of trial — including a motion based on a claim that successor counsel cannot be retained (a claim that, from time to time, we are well aware, may be utilized as a litigation tactic for delay) — is generally, and should be, a matter well within a judge's discretion. *Strothers* v. *Strothers*, 30 Mass. App. Ct. 188, 191

of the financial information provided pretrial by the husband. But, with the trial in progress, the judge appeared to think that (a point we need not address) the trial should go forward without any recess, notwithstanding the difficulties the wife was encountering in addressing the financial issues. The judge stated only that "at some point before the trial someone should have brought a request to have [certain trust documents] produced . . . . There is nothing more I can do at this point — in the middle of trial."

[7]Although a future inheritance is a mere expectancy and so is not included in a property division under G. L. c. 208, § 34, it may be considered "under the § 34 criterion of 'opportunity of each for future acquisition of capital assets and income' in determining what disposition to make of the property which *is* subject to division" (emphasis original), *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 374-375 (1985); *Williams* v. *Massa*, 431 Mass. 619, 628 (2000), and thus is of significance in this case (see, e.g., note 1, *supra*). With regard to remainder interests in trusts, see *Davidson* v. *Davidson*, *supra* at 371-375; *Williams* v. *Massa*, *supra* at 628-629.

[8]With regard to counsel fees, we acknowledge the well-settled principle that the decision whether to award attorney's fees is a discretionary matter for the probate judge. Here, while the wife's request for lifting the freeze on assets, on the surface, was not a request for fees to be paid by the husband, the record is not clear whether, and to what extent, marital assets might be affected by a partial lifting of the freeze.

(1991). In the case at bar, for the reasons addressed herein concerning the gaps in the information provided by the husband in the pretrial proceedings and the wife's need for legal representation, the refusal to grant the trial continuance resulted in unfair prejudice to the wife at trial and therefore requires allowance of her motion for a new trial. (We also note that there had not been protracted delays in this case nor had the wife filed any prior motion for a continuance.) As always,

> "[t]he effort to resolve cases finally must . . . be tempered by the need to convey a real and perceived sense of the fair administration of justice. . . . A delicate balance must be struck. A probate judge, perhaps uniquely, has both the opportunity and the burden to impart, within reasonable limits, sensitivity for the plight of those whose marital difficulties have led them to the court for the resolution of wrenching problems with untold ramifications."

*Botsaris* v. *Botsaris*, 26 Mass. App. Ct. 254, 257-258 n.5 (1988). In this case, the husband's lack of forthrightness in, for example, delaying filing the affidavit setting out his parents' assets until trial, may have left the judges, in ruling on the operative counsel-related and continuance motions, blind-sided to the real and complex financial stakes at issue in this divorce litigation.

The order denying the motion for a new trial is reversed. The provisions of the amended judgment of divorce with respect to property division and alimony (with the exception of provision 8, for return of personal property) are vacated, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*