Ketterle *v.* Ketterle.

GABRIELE KETTERLE *vs.* WOLFGANG KETTERLE.

No. 03-P-474.

Norfolk. May 3, 2004. - September 3, 2004.

Present: ARMSTRONG, C.J., LENK, & KAFKER, JJ.

*Divorce and Separation,* Division of property, Child support. *Gift.*

In a dispute about the division of marital assets, the judge properly exercised
her discretion in according greater weight to one of the statutory factors
under G. L. c. 208, § 34 — the ability to acquire future income and assets
— where the husband won a Nobel Prize [761-763]; likewise, the judge's
crediting of the husband with $83,000 in Nobel Prize proceeds which he
had promised to his mentor was not clearly erroneous [763-764].

Although a Probate and Family Court judge's order in a marital assets dispute
that the father pay the college expenses of his three children was premature
as to the two youngest children, aged thirteen and ten at the time of trial,
the judge's reasoning was otherwise sound in assigning to the father the
responsibility for college expenses of the oldest child, who was a junior in
high school at the time of trial. [765-766] LENK, J., concurring.

COMPLAINT for divorce filed in the Norfolk Division of the
Probate and Family Court Department on August 29, 2001.

The case was heard by *Christina L. Harms,* J.

*Gerald D. McLellan* for the defendant.

*Regina Healy* for the plaintiff.

KAFKER, J. Central to this dispute about the division of marital
assets is the husband's 2001 Nobel Prize for Physics.[1] The

---

[1]The husband won the Nobel Prize for Physics for his work on Bose-
Einstein condensates. "Bose-Einstein condensation has been described as
making atoms behave like the photons in a laser beam," rather than move
about in their normal state, where they "flit around randomly." 2001 Nobel
Prizes, MIT Technology Review, March, 2002, at 15. The condensates have
near and long-term applications: "One technological application that promises
to bear fruit in the near term is using the condensates to create super-accurate
atomic clocks or to make ultra-precise measurements of forces like rotation
and gravity. Even further down the road are possible applications in quantum
computing and nanotechnology." *Ibid.*

judge found that winning the Nobel Prize identified the husband as a superstar in the scientific and academic universe, and she projected his having substantial ability to acquire future income and assets. Relying heavily on this factor, she assigned the wife a greater percentage of the existing marital assets.

The husband has appealed, claiming (1) the wife received a disproportionate share of the assets; (2) the $83,000 the judge assigned to the husband out of the 2001 Nobel Prize proceeds, which was his share after taxes and his gift to his mentor of one-half of the prize money,[2] was illusory; and (3) the judge prematurely assigned to him the cost of his three children's college education.

We conclude that (1) the judge did not abuse her discretion in her over-all division of assets, including her consideration of the Nobel Prize's impact on his ability to acquire future income and assets; (2) the judge's crediting of the husband with $83,000 in Nobel Prize proceeds was not clearly erroneous; and (3) the judge did not err in ordering the husband to pay the imminent college costs of the oldest child, but did err in ordering the husband to pay the future college costs of the two younger children.

*Facts.* The plaintiff, Gabriele Ketterle (wife), and the defendant, Wolfgang Ketterle (husband), were married on September 20, 1985, in Germany. This seventeen-year marriage was the first for both parties. They had three children, born March 6, 1986; October 25, 1988; and September 28, 1992.

As found by the judge, the husband was a tenured full professor at the Massachusetts Institute of Technology (MIT), whose total wages from MIT were $179,160.98 in 2001. His health was also excellent. The wife worked part-time as a teacher's aide earning $7,317.98 in 2001. Although her physical health was fine, her mental health was "fragile." In August, 2001, she was committed for a time to McLean Hospital because of a

---

[2]In about 1990, the husband and his mentor, David Pritchard, started working together at the Massachusetts Institute of Technology (MIT) on Bose-Einstein condensation. In 1993, in order to keep the husband at MIT, Pritchard took the "extraordinary" step of turning the entire project — "equipment, students and grants" — over to the husband. 2001 Nobel Prizes, MIT Technology Review, March, 2002, at 15.

suicide attempt and severe depression. She continued to be maintained on three kinds of antidepressants.

The judge found "much to admire in the conduct of both [parties] as spouses and as parents." The husband's brilliance and hard work made the family financially secure. "The wife's total commitment to child rearing and tending to the home permitted the husband to pursue his career," which involved "very long hours at his laboratory." The wife also came to the United States from Germany to enhance her husband's career despite her "lack of fluency in English and . . . familiarity with . . . American culture."

The judge identified five basic marital assets: the former marital home in Brookline (equity of $578,000), the husband's new home (equity of $70,000), the after-tax proceeds from the Nobel Prize (this totaled either $83,000 or $166,000 depending on whether the mentor's share is included or excluded), the husband's retirement/pension funds (approximately $183,000[3]), and the wife's bank account ($54,000).

The judge awarded the marital home to the wife, and the retirement/pension funds and the after-tax Nobel Prize proceeds to the husband.[4] The judge also permitted the husband to give away one-half of his Nobel Prize money to his mentor as she was "fully persuaded that the husband's motivation is admirable and honorable, and in . . . keeping with the lofty, humanitarian, and generous values embodied by the rich history and tradition of the Nobel Prize." The judge made this ruling, however, "hand-in-glove" with her ruling that the wife not be required, as the husband requested, to refinance the marital

---

[3]The husband's retirement assets consist of a 401k account and a defined benefit pension plan. At the time of the divorce, there was $109,401.92 in the 401k plan, in which MIT matched the husband's contribution dollar for dollar. The husband's interest in the defined benefit plan was $73,649.89 at the time of the divorce. The projected worth of the defined benefit plan by the year 2023, when the husband becomes 65 years old, was $684,409.

[4]The judge carved out for purposes of division the equity in the husband's new home and the wife's bank account, treating them as essentially a wash. This was because the parties earlier had equally divided a joint bank account, each taking $97,000. The husband used his share mostly to purchase and furnish his new home and the wife saved most of her share in her bank account.

home to provide him with cash that would permit him to take, as he argued, "his half." She also rejected his contention that he was "cash-poor."

According to the judge's calculations, she gave the wife either sixty-eight percent or sixty-two percent of the assets, depending on how the mentor's share of the award is considered.[5] In explaining her division of assets, the judge relied "heavily" upon the statutory factor of the "ability of the parties to acquire future income and assets." See G. L. c. 208, § 34. The judge concluded that the husband's ability is excellent, as he retains a retirement asset in which his employer "matches his future contributions dollar for dollar," and his "receipt of the Nobel prize opens wide new horizons for his income potential." The wife's future prospects were found to be "paltry and stagnant by comparison." The judge found that the wife had "no likelihood of acquiring significant future assets or increasing her earned income."

The parties were given joint legal custody of the three children with, as the parties agreed, the oldest and youngest children residing primarily with the wife and the middle child residing with the husband. The husband was ordered to pay monthly child support of $2,500 to the wife and monthly alimony of $2,000.

The judge also found that it was "equitable to assign responsibility for college expenses to the husband now," as the wife "has no realistic ability to pay for college expenses," and "the husband has a liquid asset (the Nobel prize money) which he can prudently invest for college for the oldest child, now age 16."

*Discussion.* The husband objects to the "disproportionate"

---

[5]The judge excluded the mentor's share from the marital estate, so she deemed the split to be sixty-eight percent to thirty-two percent. As explained, *infra* at 763-764, the split was actually sixty-two percent to thirty-eight percent, as the share allocated to the mentor should have been included on the husband's side of the ledger. The husband nonetheless argues that the split was seventy-six percent to twenty-four percent because he claims all of the Nobel Prize money was offset by debts. The debts he identifies, however, are essentially the taxes owed on the prize and his obligation to his mentor.

division of marital assets.[6] Nevertheless, "an equitable, rather than an equal, division of property is the ultimate goal of G. L. c. 208, § 34." *Williams* v. *Massa*, 431 Mass. 619, 626 (2000). As provided by statute, the trial judge has "broad discretion to 'assign to either the husband or the wife all or any part of the estate of the other,' after consideration of the factors enumerated in the statute. . . . A division of marital property which is supported by findings as to the required factors will not be disturbed on appeal unless 'plainly wrong and excessive.' " *Passemato* v. *Passemato*, 427 Mass. 52, 57 (1998), quoting from *Heins* v. *Ledis*, 422 Mass. 477, 480-481 (1996).

There is no question that the judge here expressly considered all the appropriate factors. She also exercised her discretion to give more weight to some factors than others, particularly the ability to acquire future income and assets.[7] See *Williams* v. *Massa*, 431 Mass. at 631 ("[t]here is no mathematical formula to determine what weight a judge should accord to any of the factors in § 34"); *Handrahan* v. *Handrahan*, 28 Mass. App. Ct. 167, 168 (1989); *Denninger* v. *Denninger*, 34 Mass. App. Ct. 429, 430 (1993). The husband contends that the judge's heavy reliance on this factor was misplaced because the judge erroneously found (1) that the husband's future income and assets would be enhanced as a result of his receipt of the Nobel Prize; and (2) the wife would be unable to increase her earning capacity.

The judge's findings on the wife's inability to acquire future income and assets are well-supported, given the wife's limited vocational skills and mental illness. In regard to the husband, the judge emphasized not only the Nobel Prize but also the husband's lucrative retirement plan. There is no dispute regarding the valuation of the retirement plan. We also discern no error in the judge's determination that the Nobel Prize, in combination with the husband's brilliance, work ethic, good health, and relative youth (he was forty-four years old at the

---

[6]The husband has not appealed the awards of alimony or child support. The wife has not appealed any part of the judge's decision.

[7]The husband's argument that the judge did not properly consider the husband's contribution to the marriage is without support in the record. She just weighed his contribution differently than he did.

time of the trial), will provide him with significant future income and assets given the extraordinary nature of his scientific breakthrough, its worldwide recognition, and its projected near and long-term technological applications. The husband's and wife's ability to acquire future income and assets are therefore strikingly different and justify the judge's heavy reliance on this factor. See Kindregan & Inker, Family Law and Practice § 40:18, at 45 (3d ed. 2002) ("If the evidence demonstrates that one party has little or no ability to produce income and little prospect of obtaining assets by other means [such as inheritance],[8] and the other party has a history of producing income, then a strong case exists for property assignment and/or alimony in favor of the party with minimal economic prospects"). See also *McMahon* v. *McMahon*, 31 Mass. App. Ct. 504, 509 (1991) ("[w]e see no abuse of discretion in the judge's decision to afford weight to the facts that during the marriage [the husband] advanced his career and education by spending significant periods of time away from his family, [and] that as a result of his personal advancement, he has a greater opportunity to acquire income and assets in the future").

The husband also contends that the judge created a seventy-six percent to twenty-four percent split of assets, not the sixty-eight percent to thirty-two percent split that she intended. He argues that there were only two assets: the house and the retirement plan, because all of the Nobel Prize money was offset by his liabilities. We conclude, however, that the judge's crediting him with $83,000 out of the Nobel Prize proceeds was not clearly erroneous, as the prize proceeds have remained under his exclusive control since their receipt, and even when the taxes and the mentor's share are subtracted,[9] $83,000 remains. Cf. Kindregan & Inker, Family Law and Practice § 40:16, at 42 ("The court should also decide who caused the liabilities, for what purpose, who benefited and whether they were caused justifiably").

The husband was also awarded the right to give $83,000 of

---

[8]The judge did not give any significant weight to the prospects of either the husband or the wife inheriting from their parents. She also found that the wife was "estranged from her parents."

[9]These are the debts the husband references.

the Nobel Prize proceeds to his mentor.[10] The judge correctly treated this commitment as a professional or moral obligation and not a legal debt. See Restatement (Second) of Contracts § 71 comment c (1970) ("a gift is not ordinarily treated as a bargain, and a promise to make a gift is not made a bargain by the promise of the prospective donee to accept the gift") and § 86 ("Nor are moral obligations based solely on gratitude or sentiment sufficient of themselves to support a subsequent promise"). Although the wife has not appealed, and therefore this issue is waived, the $83,000 promised to the mentor should have been included in the marital estate. See *Passemato* v. *Passemato*, 427 Mass. at 57, quoting from *Levine* v. *Levine*, 394 Mass. 749, 750 (1985) ("The broad discretion of a judge under G. L. c. 208, § 34, to dispose of and assign property . . . extends by its own language only to assignment of property to the parties themselves, not to their children or any other nonparty"); *Johnson* v. *Johnson*, 425 Mass. 693, 695 (1997) ("marital property must be assigned to either the husband or the wife"). It was within the judge's discretion to allow the husband to transfer the $83,000, but only if she assigned the $83,000 to the husband's side of the ledger and did not allow him to claim that he was entitled to assets otherwise properly allocated to the wife, whose devotion to their family life had also contributed to his professional triumph. Cf. *deCastro* v. *deCastro*, 415 Mass. 787, 794-795 (1993) (rejecting claim that husband's " 'genius' alone engendered the considerable estate," and concluding that both parties contributed, "the husband by working at Data General and the wife by raising bright, happy, stable children and caring for the home"). In the instant case, we conclude that the judge did not allow the husband's generosity to his mentor to prejudice his wife,[11] but the asset split she devised was actually sixty-two percent to thirty-eight percent, not the sixty-eight percent to thirty-two percent split the judge describes, or the seventy-six percent to twenty-four percent split the husband claims. See note 5, *supra.* In sum, the husband has no basis for

---

[10]Unclear from the record is whether the husband has, to date, given his mentor the $83,000.

[11]She makes this clear when she allows the transfer only "hand in glove" with her assignment of the house to the wife, and when she rejects the husband's claims that he is "cash-poor."

arguing that he was shortchanged $83,000.

The husband also objects to the judge's assignment to him of the college expenses of the three children, contending that these expenses should be addressed shortly before each of the children prepares to enter college. "[A]s a general rule, support orders regarding the future payment of post-high school educational costs are premature and should not be made." *Passemato* v. *Passemato*, 427 Mass. at 54. *L.W.K.* v. *E.R.C.*, 432 Mass. 438, 452, 453-454 (2000). *Cabot* v. *Cabot*, 55 Mass. App. Ct. 756, 762 (2002). *Lang* v. *Koon*, 61 Mass. App. Ct. 22, 25 (2004). Support orders are meant to address the current and not the future needs of children. *Bush* v. *Bush*, 402 Mass. 406, 410 (1988). "The limited circumstances that do justify orders for future educational expenses have involved children with special needs or profligate parents." *Lang* v. *Koon*, 61 Mass. App. Ct. at 25, citing *Passemato* v. *Passemato*, 427 Mass. at 54-55; see *Taverna* v. *Pizzi*, 430 Mass. 882, 886 (2000). No argument has been made that either of these exceptions applies here.

The trial judge nonetheless concluded that it was "equitable to assign responsibility for college expenses to the husband now." She determined that the wife would not be able to pay for college expenses and that the husband "has a liquid asset (the Nobel prize money) which he can prudently invest for college for the oldest child," who was a junior in high school at the time of the trial and who has subsequently been admitted to attend Stanford University.[12]

For the two younger children, aged thirteen and ten at the time of the trial, we conclude that the order was premature. As college is now imminent for the oldest child, see *Cabot* v. *Cabot*, 55 Mass. App. Ct. at 765; *Lang* v. *Koon*, 61 Mass. App. Ct. at 26 n.11; American Law Institute, Principles of the Law of Family Dissolution: Analysis and Recommendations § 3.12, comment b, illustration 1 (2002), and the judge's reasoning is otherwise sound in assigning to the father the responsibility for the oldest child's college expenses, we affirm the judge's order to the husband to pay the oldest child's college expenses.[13]

---

[12]This fact, and an arrangement between father and child to pay for college, was represented at oral argument.

[13]The husband has also vaguely objected to the termination of the parent

*Conclusion.* So much of the judgment that orders the husband to pay the future college expenses of the two younger children is vacated. The balance of the judgment is affirmed.

*So ordered.*

LENK, J. (concurring). I concur in the decision in all respects but write separately to address only the subject of college costs, an issue that we see arising with some frequency of late. This is due in no small part to the fact that, at the same time that a college education has become an ever more necessary career predicate, the costs of providing one have simply skyrocketed. Even intact families of some financial means who wish to provide this opportunity often find themselves hard pressed to pay for college tuition, room, and board out of current income; those who have not otherwise saved for it may willingly tap other marital assets such as the equity in their homes or mutually incur other marital debt.

The difficulty is greatly magnified when the issue is confronted by divorcing couples, not all of whom are able, or willing, to sort it out for themselves. When, as here, divorcing couples of considerable means and education, who apparently intend their children to receive a college education, cannot agree upon how to divide marital property and apportion ongoing obligations, let alone the matter of paying for college, their unresolved and often intractable disputes are laid before Probate and Family Court judges. These judges do their best to resolve such disputes in as global, long-term, workable, and stabilizing a fashion as possible for all concerned. Deferring until the time college is on the doorstep the decision who will pay for all or part of it often undercuts this salutary effort and renders expensive future litigation to settle the question terribly likely. In the interim, with the marital assets already divided and a

coordinator. This was not an abuse of discretion. Finally, the husband objects to a statement made by the judge that the husband could "remind a future decisionmaker" that the wife received sixty-eight percent of the marital assets and the husband was responsible for college expenses, "in the event of a future claim by wife for an increase in alimony or child support." We consider the statement to be of no legal import.

contested divorce behind them, neither parent may perceive much rational incentive to plan or save from current income for college costs, guided by the hope that the other parent will ultimately be seen as more able to pay. When the time comes, however, neither may be in the position to do so, much to the child's detriment.

I concur in the result reached here because, in the circumstances, the judge's resolution of the college cost issue did not in certain respects comport with settled case law by which we are constrained. That the judge tried to address the issue, however, was quite understandable. The judge's order as to the two younger children was structured as being, in essence, in the nature of a child support order. To the extent that payment of college costs is viewed as child support, G. L. c. 208, § 28, and the cases construing it limit to "current" need any support amount awarded. Child support (available for college-bound dependent children over the age of eighteen) is generally deemed prematurely awarded as to a child much under that age for whom college is not yet on the horizon. Cf. American Law Institute (ALI), Principles of the Law of Family Dissolution: Analysis and Recommendations § 3.12 (2002).[1] Nothing in the judge's order suggests reliance upon G. L. c. 208, § 34, which expressly permits judges at the time of divorce to consider the future needs of dependent children "in fixing the nature and value of the property to be so assigned." Hence, we need not decide whether a judge may, in appropriate circumstances not limited to "children with special needs or profligate parents," *Lang* v. *Koon*, 61 Mass. App. Ct. 22, 25 (2004), require one or both parents to set up, as part of the division of marital assets, a trust or like mechanism for possible future college costs that would revert to the parent(s) if the dependent child later did not attend college or there were some other source of payment for such costs (such as merit scholarships).

---

[1] We have cited with favor the American Law Institute's commentary suggesting that it is appropriate to fashion child support orders in a manner consistent with that which the noncustodial parent should reasonably have been expected to contribute had the child lived with him. *Brooks* v. *Piela, ante* 731, 737 n.8 (2004).