# J.D.H. *vs.* P.A.H.

No. 06-P-965.

Middlesex. November 6, 2007. - February 29, 2008.

Present: LENK, BROWN, & McHUGH, JJ.

*Divorce and Separation,* Alimony, Division of property. *Probate Court,* Divorce. *Evidence,* Judicial notice. *Debt.*

In awarding alimony in a divorce action, a Probate and Family Court judge did not improperly take judicial notice of facts concerning the wife's mental health that were excluded pursuant to a motion in limine, where the husband introduced the facts in his own testimony regarding the wife's mental health, and the motion in limine precluded only such evidence that the wife sought to introduce, and where the judge did not take judicial notice of those facts, but rather invoked the concept of admissions; moreover, even if the judge should not have considered such facts, there was ample evidence before the judge at trial to support the judge's finding that the wife had mental health issues that would impede her ability to find and maintain consistent work. [289-291]

The evidence in a divorce action supported the judge's finding regarding the wife's earning capacity. [291-292]

In a divorce action, the judge did not err in including as marital debt the wife's uninsured medical bills, which she incurred because she left her job and allowed the parties' medical insurance to lapse, where the wife did not leave her job purposefully to harm the marital estate, and where the parties' inability or unwillingness to communicate about the wife's health coverage contributed to the creation of the debt. [292]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on February 20, 2004.

The case was heard by *Robert W. Langlois,* J.

*Alfred P. Farese, III,* for the husband.

BROWN, J. J.D.H., the former husband of P.A.H., appeals from a judgment of divorce nisi of the Probate and Family Court that, in pertinent part, divides the parties' property, allocates the "marital debt," and orders the husband to pay alimony to the wife in the amount of $250 per week. We affirm the judgment.

1. *Background.* In February, 2004, the husband filed a complaint for divorce alleging an irretrievable breakdown of the parties' thirty-year marriage. Following the issuance of temporary orders (including an order requiring the husband to pay alimony to the wife in the amount of $100 per week), the husband filed a motion, assented to by the wife, to appoint a guardian ad litem (G.A.L.) for purposes of investigating the mental competency of the wife and her ability to understand the nature and consequences of the divorce proceedings. The motion was allowed by a probate judge and an order was issued appointing a G.A.L. and directing that the G.A.L. be paid from the cash surrender value of a life insurance policy owned by the wife.

Some three months after the appointment of the G.A.L., the husband filed a complaint for contempt alleging that the wife had failed to meet the G.A.L. and that the wife, in fact, had cashed in her life insurance policy without paying the G.A.L. Thereafter, the wife moved to reassess the need for a G.A.L. (citing her lack of ability to pay the G.A.L. and asserting that she had agreed to the appointment on the belief that her life insurance policy had a cash surrender value). On September 7, 2005, the judge terminated the appointment of the G.A.L.[1] On the judge's order, a judgment entered dismissing the husband's complaint for contempt.

On November 28, 2005, the day scheduled for trial of the divorce complaint, the husband filed a "motion in limine to preclude [the wife] from introducing evidence at trial including any documentary evidence and evidence of her psychological condition."[2] The motion was allowed and the case was heard. After the issuance of the judgment of divorce nisi, the husband

---

[1]The husband represents in his supplemental memorandum, without reference or citation to the record, that the judge indicated on September 7 that the appropriate remedy for the wife's failure to participate in the G.A.L.'s evaluation was a motion in limine to preclude the admission of evidence of the wife's mental health. A pretrial conference also took place on September 7 and, in accordance with the judge's pretrial notice, the husband submitted a memorandum (dated September 6, 2005) which we shall discuss more fully, *infra.*

[2]The husband has included in the record appendix only the first page of the motion. Among the various reasons cited by the husband in requesting allowance of the motion was the wife's failure to meet with the G.A.L. and the husband's belief that the wife would attempt to introduce evidence at trial that had never been provided to his counsel.

filed his notice of appeal. Upon the entry of the appeal in this court, and at the suggestion of the husband, we remanded the matter to the Probate and Family Court with directions that the judge make detailed findings of fact and explicate the reasons for his decision. The judge has now filed his findings, which we summarize below.

The parties were married in September, 1974, and last lived together in January, 2004. Two children were born of the union, both of whom were adults at the time of trial.

The husband is fifty-four years old and is in good health. For the past twenty-eight years, he has owned and operated a bakery sales company (valued at $75,000) in which he picks up and delivers bakery products and makes a profit on the markup. The husband earns $885 per week in salary and an average of $200 per week from overtime and commissions. The husband has been carrying the costs of two households (i.e., the former marital home and the apartment in which he resides) and lists his weekly expenses at $1,010.63 per week.

The wife is fifty years old and, the judge found, has had on-going "mental health issues."[3] During the early years of the marriage, the wife cared for the parties' children. She later sold real estate and worked as a teller and in customer service for banks and credit unions. During the last four years of the mar-

---

[3]After the parties separated in January, 2004, the wife left the marital home and rented an apartment. The judge found that upon the wife's return to the marital home in July, 2004 (because she could not afford the apartment), the wife initially left her furniture in the yard and slept in her car in the driveway. Continuing, the judge found, based on the husband's testimony, that when the husband vacated the home and the wife moved back in, the wife removed a newly installed ceiling panel and all of the light bulbs in the basement. The judge also "judicially notice[d]" facts asserted in the husband's pretrial memorandum, to wit, the husband's assertion that the "[w]ife removed the electrical wiring from the home because she was suffering paranoid delusions; [the w]ife thought that the home was wired by the [Federal Bureau of Investigation]; and, [the wife] attempted to disable the main electrical panel of the home with a crowbar which could have resulted in her electrocution." (The judge noted, with respect to the ceiling and wiring, that there was no rational explanation for the wife's conduct "other than it is indicative of [the w]ife's ongoing mental health issues.") The judge also took notice of the husband's statements in his pretrial memorandum (see note 1, *supra*) that the wife is self-destructive and is, at times, a danger to herself. The judge stated that the wife received mental health treatment on an inpatient basis at McLean Hospital in February, 2005, some nine months before the divorce trial.

riage, the wife worked as a procurement technician with the United States Department of Defense, earning $34,917 annually. She left that job in July, 2004, because she felt "unsafe and uncomfortable" at her workplace.[4] By reason of the wife leaving her employment, the parties lost their health insurance (which had been provided through the wife) and the wife subsequently incurred $38,000 in uninsured medical expenses as a result of her treatment at McLean Hospital (see note 3, *supra*). The wife's attempts to revive her real estate career[5] and to obtain other employment since leaving the Department of Defense have been unsuccessful. At the time of trial, the wife's only source of income was the $100 she received each week from the husband as temporary alimony.

The primary asset owned by the parties is the former marital home, which has an equity value of $370,697. The parties enjoyed a modest middle class lifestyle during the marriage. The judge concluded that the wife's over-all employment prospects are poor and that her "mental health issues will continue to impede her ability to find and maintain consistent work, so as to allow her to meaningfully produce income sufficient for her needs for the foreseeable future." The judge found that the wife requires support from the husband to maintain even a modest standard of living. Moreover, the judge found that upon the sale of the former marital home (which was on the market at the time of trial), the husband's weekly expenses should diminish substantially and that he has the ability to pay support to the wife. The judge also concluded that the unpaid medical expenses (in the amount of $38,000) incurred by the wife since the parties' separation were properly marital debts.

The judgment of divorce nisi, entered December 12, 2005, ordered in pertinent part that the husband receive full ownership of his business, that the wife receive fifty-eight percent and the husband forty-two percent of the net proceeds from the sale of the former marital home,[6] and that the husband pay the wife as

---

[4]The judge found that the wife testified credibly as to why she left her employment. The judge stated expressly that "[n]o finding is made as to whether or not [the wife's] feelings were rationally based."

[5]The judge found that the "[w]ife believes and testified that, at best, she might be able to earn $25,000 a year selling real estate."

[6]The judge indicated that the "net proceeds" from the sale of the marital

alimony the sum of $250 per week (which sum was to be taxable to the wife and deductible by the husband). The judgment stated that the judge had considered all of the factors specified in G. L. c. 208, § 34, including the parties' health.

2. *Discussion.* a. *The alimony award.* A primary thrust of the husband's argument is that the alimony award must be set aside as it is based on the judge's improper judicial notice of facts concerning the wife's mental health that were contained in his pretrial memorandum (see note 1, *supra*). The husband's argument is essentially two-pronged. First, he asserts that "[d]espite allowing a [m]otion in [l]imine regarding the exclusion of *all* evidence of wife's mental health history for purposes of determining alimony, the [judge] in fact considered, gave weight to, and ultimately determined alimony based upon the excluded evidence" (emphasis supplied). In the husband's view, the judge, in essence, allowed the wife to circumvent the order requiring a mental health investigation and violated its own "curative" order.[7] Second, the husband appears to assert that the facts concerning the wife's mental health issues were not a proper subject for judicial notice, which requires that the facts be so commonly known in the community as to be indisputable among reasonable persons or, if not generally known, that they are capable of immediate and accurate verification by resort to easily accessible and authoritative sources. See *Bostwick* v. *Hurstel*, 364 Mass. 282, 293 n. 3 (1973); *Yankee Atomic Elec. Co.* v. *Secretary of the Commonwealth*, 403 Mass. 203, 208 (1988); *Commonwealth* v. *Barrett*, 1 Mass. App. Ct. 332, 334-335 (1973). See also Brodin & Avery, Massachusetts Evidence § 2.8 (8th ed. 2007); Young, Pollets, & Poreda, Evidence § 201.1 (2d ed. 1998). The husband also asserts that the judge violated the husband's due process rights by failing to provide him with

---

home was the amount remaining after the payment of the balance due on both the first mortgage and an equity line of credit, the costs normally incident to the sale of a home, and the wife's preexisting medical expenses. Additional provisions were made for any broker's commission received by the wife.

[7]The husband states that a mental health investigation would have resulted in his ability "to admit and/or challenge the findings and the determination of [the w]ife's ability to work, her voluntary failure to take medication, and need for alimony." As we have indicated, the appointment of the guardian ad litem was terminated on September 7, 2005.

notice of the judge's intention to take judicial notice of facts or the opportunity to be heard and to dispute the matter. See Brodin & Avery, *supra* at § 2.9; Young, Pollets, & Poreda, *supra* at §§ 201.15-201.16.

As to the former issue, we do not interpret (nor did the judge) the order allowing the motion in limine to exclude *all* evidence of the wife's mental health history at trial. Rather, from all that appears in the limited record before us (see note 2, *supra*), the motion, which was crafted by the husband, sought only to preclude *the wife* from introducing such evidence. The judge was careful to note in his findings that he received evidence in the form of *the husband's* testimony regarding the wife's mental health difficulties. Similarly, the judge's "judicial notice" of certain facts asserted in the pretrial memorandum was directed only toward assertions made by the husband.

As to the latter issue, we think it is evident that the judge, although using the language "judicial notice," did not take notice of the facts stated in the pretrial memorandum in the sense that they were commonly known in the community or were capable of being immediately and accurately verified. Rather, it appears that the judge was invoking the concept of "admissions," see Brodin & Avery, *supra* at § 2.3.2, a subject which the husband has failed to address in his brief and supplemental memorandum.[8] See *Mitchell* v. *Walton Lunch Co.*, 305 Mass. 76, 80-81 (1940). See also Mass.R.Dom.Rel.P. 16; *Slade* v. *Slade*, 43 Mass. App. Ct. 376, 377-380 (1997) (decided prior to the adoption of Mass.R.Dom.Rel.P. 16). In the circumstances, and on the limited arguments raised, we would be warranted in affirming the alimony award.

Even were we to assume, however, that the judge should not have considered the "facts" asserted by the husband in his pretrial memorandum,[9] there was ample evidence before the judge at trial, including evidence of the wife's bizarre and erratic

---

[8]It is interesting to note that the husband, while challenging the judge's reliance on the statements in the husband's pretrial memorandum, asserts in his brief that the "[w]ife was hospitalized and sent for inpatient mental health evaluation at an expense of $38,000 after trying to disassemble the main electrical panel in the home without any electrical experience, on the hunch that she was being spied upon."

[9]The statements in issue in the husband's pretrial memorandum are listed

behavior and her recent treatment at McLean Hospital,[10] to support the judge's findings that the wife, who is fifty years of age, has mental health issues that (the judge reasonably could conclude) will impede her ability to find and maintain consistent work or otherwise create financial burdens for her.[11]

The husband also argues that the alimony award must be set aside because the judge understated the wife's earning capacity. See *Heins* v. *Ledis*, 422 Mass. 477, 485 (1996) ("A judge is not limited to a party's actual earnings but may . . . consider potential earning capacity"); *Kelley* v. *Kelley*, 64 Mass. App. Ct. 733, 741 (2005). Specifically, he asserts that the judge "indicated" that the wife would be able to earn $25,000 per year in real estate sales when the wife herself testified that she

under "contested issues of fact" and the judge appears not to have entered a pretrial order setting out any factual admissions. See Mass.R.Dom.Rel.P. 16. See also Young, Pollets, & Poreda, *supra* at § 801.10 ("By [rule 16's] terms, any stipulations of the parties or admissions of facts will control the subsequent conduct of the case if included in the pretrial order" and unless modified at trial). Moreover, the pretrial factual assertions considered by the judge were never referred to at the trial and the judge never voiced his intention to consider the pretrial memorandum.

[10]At oral argument the husband's counsel appeared to suggest that no evidence was adduced *at trial* concerning the wife's hospitalization at McLean Hospital. (The husband does not contest that McLean Hospital is a mental health facility. See, e.g., *Doe* v. *Doe*, 377 Mass. 272, 274 [1979]; *Leavitt* v. *McLean Hosp. Corp.*, 28 Mass. App. Ct. 598, 598 [1990]; *Ketterle* v. *Ketterle*, 61 Mass. App. Ct. 758, 759-760 [2004].) Rather, he stated that the judge improperly considered comments concerning the wife's hospitalization made by the parties during colloquies with the judge immediately preceding trial. This argument ignores counsel's own questioning of the husband at trial which, from all that appears, called the husband's (and the judge's) attention to the wife's statements during the pretrial colloquies concerning the medical bills she incurred at McLean Hospital. The wife also testified, without objection, to the substantial bill she received from McLean Hospital and her treatment there.

As evidence bearing on the wife's mental health was put before the judge, there is nothing which would have precluded the husband from seeking to offer evidence as to the wife's ability to work when she was on medication.

[11]Though we fail to discern error *in this case*, we are obliged to stress that where a judge, as here, presides at various stages of a proceeding (see note 9, *supra*), including the trial, see *Matter of Curry*, 450 Mass. 503, 525 n.30 (2008), he or she must take particular care to ensure that his or her decision is based on evidence properly before him or her and that neither party is unfairly surprised by the actions taken. Cf. *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 127 (1982).

had earned $35,000 to $40,000 per year in real estate in the past and that she could earn $75,000 to $80,000 in the future.

The wife testified that she did not remember how much she earned in her earlier years in real estate but that it was "[m]aybe 35 to 40." Although the wife testified that in a *good* market she could probably earn "75 or 80," she stated that in the present market she would be "lucky" to earn $25,000. The judge, who found that the wife's "desired vocation suffers from poor economic conditions and inconsistent and unreliable pay," did not err in stating that the "[w]ife believes and testified that, at best, she might be able to earn $25,000 a year selling real estate."

b. *The marital debt/medical bills.* The husband argues that the judge's "inclusion of [the] wife's uninsured medical bills into marital debt" constitutes reversible error as the wife "solely accumulated the debt and should be solely responsible for it." Such a result, in the husband's view, is particularly appropriate in the present case as the wife, who was responsible for maintaining health insurance, lost her insurance when she left her job and failed to seek alternative forms of health insurance. Cf. *Duckett* v. *Duckett*, 27 Mass. App. Ct. 1164, 1165 (1989) ("judge could reasonably decide to leave each marital party to his or her debts in view of the finding that the husband had been profligate in incurring personal and business debts"). See Kindregan & Inker, Family Law and Practice § 40:16 (3d ed. 2003).

In determining that the wife's medical expense debt was marital debt (that was to be subtracted from the proceeds from the sale of the marital home prior to the division between the parties of the net proceeds from the sale), the judge acknowledged that the medical debt was incurred because the wife left her job with the Department of Defense and allowed the parties' medical insurance to lapse. The judge found, however, that the wife did not leave her job purposefully to harm the marital estate (see note 4, *supra*), and he further found that both parties' "inability or unwillingness to communicate about the wife's health coverage issue contributed to the creation of these debts." There is nothing in the record before us that would cause us to conclude that the judge erred in his treatment of the debt.

*Judgment affirmed.*