KING vs. CERBONE, 101 Mass. App. Ct. 783

 
 PHILIP M. KING vs. ANTONIETTA CERBONE.

101 Mass. App. Ct. 783
 January 13, 2022 - October 4, 2022

Court Below: Probate and Family Court, Essex Division
Present: Green, C.J., Sullivan, & Henry, JJ.

 

No. 21-P-214.

Divorce and Separation, Division of property, Pension benefits, Judgment. Pension. Contempt.

At a proceeding on cross complaints for contempt for the parties' failure to come to agreement on the division of the husband's Federal employment pension pursuant to a judgment of divorce, the Probate and Family Court judge erred in finding the wife in contempt, where the divorce judgment did not explicitly address the contested issue and was not so clear and unequivocal as to merit a finding of contempt, and where the judge misinterpreted the applicable Federal regulations. [790-792]

This court concluded that, in a divorce proceeding, once the trial judge divided one-half of the marital coverture portion of the husband's Federal employment pension and awarded the wife fifty percent of any benefit the husband receives, the wife's share carried with it the right to name their children as beneficiaries of her portion, where such an election was consistent with the divorce judgment. [792-795]

Complaint for divorce filed in the Essex Division of the Probate and Family Court Department on February 4, 2016.

 Complaints for contempt, filed on July 18, 2019, and August 7, 2019, were heard by Mary Rudolph Black, J., and a motion for relief from judgment was heard by her.

 W. Sanford Durland, III, for the wife.

 Robert R. Herrick for the husband.

 SULLIVAN, J. Among the marital assets subject to division in divorce proceedings are the respective spouses' pension plans. This matter comes before us on a partial judgment of civil contempt after the parties were unable to agree, following a divorce judgment, on an order designed to divide one portion of the former husband's (husband) Federal pension. Although a seemingly idiosyncratic dispute, the issues raised highlight the challenges faced by parties and judges in crafting judgments and subsequent orders dividing pensions. For the reasons that follow, we vacate the partial judgment of contempt.

 Page 784 

 Because of the complexity of pension plans, and the "comprehensive and reticulated" statutory and regulatory schemes that govern them (citation omitted), Mertens v. Hewitt Assocs., 508 U.S. 248, 251 (1993), the administrators of pension plans must first approve a proposed division before the division can be enforced as a court order and implemented by the plan administrator. In the private sector, the parties draft what is known as a domestic relations order (DRO). See § 206(d)(3)(G)(i), (ii) of the Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. § 1056(d)(3)(G); 26 U.S.C. § 414(p)(1), (6)(A)(ii). Once approved by the plan administrator, it becomes a qualified domestic relations order (QDRO), and may be entered as an order of the court. [Note 1] Where a Federal Employee Retirement System (FERS) pension is concerned, it is the United States Office of Personnel Management (OPM) that approves and administers what is called a "court order acceptable for processing" (COAP). See 5 U.S.C. § 8467; 5 C.F.R. §§ 838.101-838.1018. [Note 2] The process of drafting and finalizing an order that a plan administrator can approve and that a court may enter can be as complex as the plans themselves.

 This appeal presents one such case involving the interpretation of OPM regulations governing COAPs and the COAP approval process, and the distinctions drawn in those regulations between the role of OPM and the role of the Probate and Family Court 

 Page 785 

judge. The matter comes before us on the former wife's (wife) consolidated appeals from a partial judgment finding her in contempt for failing to agree to a COAP governing the division of the husband's FERS pension benefits and awarding attorney's fees, and the subsequent denial of her motion for relief from judgment pursuant to Mass. R. Dom. Rel. P. 60 (b). We vacate the partial judgment of contempt, as we conclude that the OPM regulations do not limit a judge's authority to enter a judgment dividing the FERS "Basic Benefit" so long as the divorce judgment and ensuing COAP provide a form of benefit that falls within the FERS "Basic Benefit Plan." We also conclude that a divorce judgment that effectuates a percentage division of a pension benefit carries with it rights of election recognized by the applicable plan unless the judge (or the parties to a separation agreement) provides otherwise, and the relevant plan permits the restriction.

 Background. The FERS pension scheme has three distinct components: (1) a "Basic Benefit Plan," based on age, salary, and years of creditable service, payable as an annuity; (2) Social Security; and (3) a "Thrift Savings Plan" (TSP), an individual account, defined contribution plan, the value of which is based on contributions made by the employer and the employee. See OPM, Retirement Services, FERS Information, https://www.opm.gov/retirement-services/fers-information [https://perma.cc/932K-THPS]; https://www.opm.gov/retirement-services/fers-information/computation [https://perma.cc/YG6Q-DS7U]. The only matter in contention on appeal is the division of the Basic Benefit Plan component of the FERS pension. [Note 3] The division of the TSP and the proposed COAP await finalization without apparent controversy. [Note 4] 

 Page 786 

For simplicity's sake, we shall adopt the nomenclature used by the judge before whom the divorce case was tried (trial judge) and refer to the Basic Benefit Plan as the "FERS pension" for the balance of this opinion.

 The parties were married for over twenty years, and upon dissolution of the marriage, the trial judge "awarded one-half of the marital coverture portion" of the husband's FERS pension and the wife's two retirement accounts to each party. The wife had worked in the private sector, and the trial judge ordered, based on the parties' agreement, an equal division of that retirement account, as well her teacher's pension. An additional provision of the divorce judgment applicable to the FERS pension stated:

"17. The wife shall receive fifty percent of any benefit the husband receives from his [FERS] pension. To the extent allowed by FERS, the husband shall provide [a] survivor annuity to the wife on his FERS pension, payable upon the death of the husband. The parties shall share equally any additional cost which results from selection of this option. The husband shall take whatever steps necessary to effectuate this provision by April 30, 2019." [Note 5]

The trial judge further ordered that "[t]he parties shall cooperate with each other and counsel in taking any necessary steps to carry-out the above allocation of retirement accounts, including executing any associated paperwork. The parties shall submit the [appropriate order] to the Court along with a joint motion to approve the [order] upon completion."

 Page 787 

 In July and August of 2019 the parties filed cross complaints for contempt alleging a failure to cooperate in the COAP drafting process. On September 5, 2019, the parties, after hearing, stipulated that "the parties shall hire attorney Margaret Carleen to draft orders dividing retirement assets (four orders total) pursuant to [the] judgment of divorce by 30 Sept. 2019." This stipulation was incorporated into an order of the same date.

 The husband, however, disagreed with language in the proposed COAP drafted by Attorney Carleen requiring that the wife's share of the FERS pension be paid to the parties' children if the wife predeceased the husband. During a hearing on November 7, 2019, a different judge (contempt judge) ordered the parties to file memoranda addressing the question whether the proposed COAP was consistent with, or "in violation of," the terms of the divorce judgment. The contempt judge further directed the parties to "detail[] their respective positions on the following disputed issues: (a) the amount of [the wife's] share of the FERS pension plan; (b) the disposition of [the wife's] share of the FERS pension plan if she predeceases [the husband]; and (c) the survivor annuity." [Note 6]

 The contempt judge found the wife in civil contempt for "unilaterally" directing Attorney Carleen to draft the COAP at the wife's "sole direction," without consultation with the husband, resulting in the inclusion of terms that the husband claimed were "contrary" to the divorce judgment. The contempt judge ordered the wife to pay the husband's contempt-related attorney's fees and ordered that the COAP be revised to include language directing that the wife's share of the FERS pension revert to the husband if she predeceased him.

 The contempt judge reasoned that the Code of Federal Regulations governed the allocation of the wife's share of the FERS pension if she predeceased the husband:

"Nowhere does the Divorce Judgment or the Rationale state 

 Page 788 

what will happen to the Alternate Payee's/[wife]'s share of the FERS pension plan upon the death of the Participant, [husband]. [Note 7]

"As represented and argued by [the husband], the Court finds the relevant provision in Title 5 of the Code of Federal Regulations is 5 C.F.R. § 838.237 ('Death of the former spouse') apply [sic]:

"'(a) Unless the court order acceptable for processing expressly provides otherwise, the former spouse's share of an employee annuity terminates on the last day of the month immediately preceding the death of the former spouse, and the former spouse's share of employee annuity reverts to the retiree or phased retiree.

"'(b) Except as otherwise provided in this subpart, OPM will honor a court order acceptable for processing or an amended court order acceptable for processing that directs OPM to pay after the death of the former spouse, the former spouse's share of the employee annuity to --

"'(1) The court;

"'(2) An officer of the court acting as fiduciary;

"'(3) The estate of the former spouse; or

"'(4) One or more of the retiree's or phased retiree's children as defined in 5 U.S.C. [§§] 8342(c) or 8424(d).'

"As applied to the present case, paragraph (a) of § 838.237 states that unless the 'COAP' provides for one of the options listed in section (b), then upon the death of the Alternate Payee/[wife], her share of the FERS pension plan reverts to the 'retired employee,' which is the Participant/[husband].

"Since the Divorce Judgment is silent on what happens upon the Alternate Payee's/[wife]'s death, the 'COAP' should reflect the provisions of 5 C.F.R. § 838.237 and may not contain a provision directing the Alternate Payee's/[wife]'s 

 Page 789 

share of the FERS pension plan to anyone other than the participant/[husband]." (Alteration omitted.)

This appeal followed.

 Discussion. 1. OPM regulations. Before addressing the particulars of the contempt judgment, we briefly describe the regulatory scheme applicable to FERS COAPs and the division of FERS benefits. [Note 8]

 OPM is charged with administering State court orders dividing a FERS pension benefit. 5 C.F.R. § 838.101(a)(1). A court order is acceptable for processing if it meets certain criteria set forth in the regulations. See 5 C.F.R. §§ 838.301-838.306. In general, the order must identify the plan, the participant (that is, the employee or retiree), and the former spouse. It must also expressly divide the participant's annuity and provide sufficient instructions and information to OPM so that it may determine whether the proposed order complies with Federal law and compute the former spouse's share of the annuity. See id. OPM plays no role, however, in determining what benefit the former spouse receives, other than to determine whether the benefit is one that can be approved by OPM and whether the order is sufficiently clear that it can be administered.

"In executing court orders under this part, OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court's intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance with these regulations. Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court." (Emphases added.)

5 C.F.R. § 838.101(a)(2). It is the responsibility of the participant to bring disputes to the State court for resolution. See 5 C.F.R. § 838.123(d). It is the responsibility of the State courts to settle all disputes between the employee or retiree and the former spouse regarding division of the FERS pension and the COAP, and to issue "clear, specific, and express instructions" as to how a FERS 

 Page 790 

pension should be divided. 5 C.F.R. § 838.122(b). [Note 9]

 The regulatory language that the husband urged upon the contempt judge is contained in a portion of the regulations entitled "Payment Procedures." These sections cover start dates, termination, collection of arrearages, and lump sum awards. See 5 C.F.R. §§ 838.231-838.235. These sections also contain provisions stating how OPM will interpret and administer court orders; C.F.R. § 838.236 outlines what court orders conflict with applicable Federal law, and states that OPM will not honor such orders. It also states that unless the COAP expressly provides otherwise, the former spouse's share will revert to the participant if the former spouse predeceases the participant. However, it also expressly authorizes the payment of the share of the deceased former spouse to (among others) their estate or children. See 5 C.F.R. § 838.237.

 With this background in mind, we turn to the contempt judgment.

 2. Contempt. "A Probate and Family Court judge has the power and authority to find a person in contempt. G. L. c. 215, § 34. '[A] civil contempt finding [must] be supported by clear and convincing evidence of disobedience of a clear and unequivocal command.' Birchall, petitioner, 454 Mass. 837, 838-839 (2009)." Department of Revenue Child Support Enforcement v. Grullon, 485 Mass. 129, 133-134 (2020). The issue before the contempt judge on the cross complaints for contempt was the disposition of the wife's share of the FERS pension if she predeceased the husband. The trial judge permissibly ordered that the parties cooperate in the retention of counsel for purposes of drafting the COAP, but a judge cannot order the parties to agree on a contested 

 Page 791 

issue in the divorce under penalties of contempt, unless that matter was settled by a judgment and the judgment is clear and unequivocal. The divorce judgment did not explicitly address the contested issue and was not so clear and unequivocal as to merit a finding of contempt.

 Additionally, on the merits of the arguments before us, the wife was not in contempt for proffering a version of the COAP that comported with her understanding of the divorce judgment. The contempt judgment was founded on a misapprehension of the regulations. As a technical matter, the OPM regulation applies only to COAPs -- that is, court orders acceptable for processing. It does not apply to a judgment that is not a COAP. See 5 C.F.R. § 838.237. More fundamentally, the determination of the intent and meaning of the divorce judgment is for a judge, not OPM. OPM does not divide marital assets, nor does it purport to influence the substance of State court orders regarding the division of a FERS pension, provided that the order is clear and does not conflict with Federal law. OPM's role is purely "ministerial," and it will not "clarify the court's intent." 5 C.F.R. § 838.101(a)(2).

 The regulation on which the contempt judge relied is an interpretive aid designed to assist OPM in its ministerial function of implementing an otherwise acceptable order and places all parties on notice that if the COAP is silent on the subject, the FERS pension will revert to the participant spouse if the former spouse predeceases the participant spouse. [Note 10] See 5 C.F.R. § 838.237. The regulation is not intended to govern the interpretation of the divorce judgment as to the division of the FERS pension, a function reserved to the judge.

 The contempt judge erred as a matter of law in relying on the Federal regulations to conclude that the COAP "may not contain a provision directing the Alternate Payee's/[wife]'s share of the FERS pension plan to anyone other than the participant/[husband]." 

 Page 792 

The operative language of the regulation is the default interpretation "[u]nless the court order acceptable for processing expressly provides otherwise." 5 C.F.R. § 838.237. OPM regulations permit the wife's share of the husband's FERS pension to pass to their children if she predeceases him. It is for a judge to decide the appropriate division of a FERS pension based on State domestic relations law. See G. L. c. 208, § 34; Stacy v. Stacy, 97 Mass. App. Ct. 160, 164 (2020), quoting In re Burrus, 136 U.S. 586, 593-594 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States"). [Note 11] OPM determines whether the resulting order comports with Federal law, and if it does, and is otherwise acceptable, OPM implements the order of the State court judge.

 3. The COAP. Relying on Plachy v. Plachy, 282 Ga. 614, 615 (2007), the wife argues that we should rule, as a matter of law, that once the FERS pension was divided, she was entitled to direct the payment of her portion of the pension benefit to their children if she predeceased the husband. In Plachy, the trial court approved a COAP that permitted the wife to leave her share of the pension to her estate if she predeceased the husband, even though the separation agreement in the case was silent on the question whether she would be able to do so. The Georgia Supreme Court affirmed, reasoning that once the pension was divided by the divorce judgment, the wife's share became her property to devise as she chose, within the scope of the Federal regulations. Id.

 The reasoning in Plachy is instructive, and while we do not adopt its precise reasoning, we likewise conclude that once the trial judge divided "one-half of the marital coverture portion" of the FERS pension and awarded the wife "fifty percent of any benefit the husband receives," the wife's share carried with it the right of election to the children.

 In Plachy, the Georgia Supreme Court relied on its previous precedent in Hollis v. Hollis, 278 Ga. 303, 304 n.4 (2004), to conclude that "title" of the wife's share under the judgment passed to the wife once the Federal pension was divided. Hollis involved real estate, and so the concept of title was fully 

 Page 793 

applicable there. Id. at 304. As a matter of Federal pension law, the FERS pension is held by the government, which administers the benefits, and the former spouse's share in the benefit (often an annuity) is not divided until the COAP is approved. [Note 12] While we are not persuaded that "title" is the appropriate term, we agree that the division of the FERS pension in the divorce judgment carries with it associated rights under FERS. Cf. Pfannenstiehl v. Pfannenstiehl, 475 Mass. 105, 111 (2016) ("we are not bound by traditional concepts of title or property in considering whether a particular interest is to be included in the marital estate, [and] we have held a number of intangible interests [even those not within the complete possession or control of their holders] to be part of a spouse's estate for purposes of [G. L. c. 208,] § 34" [quotations and citation omitted]).

 This interpretation of the divorce judgment has the benefit of both clarity and simplicity. If in future cases a judge intends to alter a percentage division (of any percentage) in some way, or account for differences in value, rights of election, or the like, the divorce judgment should so state. Otherwise, a percentage division of a pension asset will carry with it associated rights to elect a beneficiary, subject ultimately to qualification of a COAP or DRO by the plan administrator. [Note 13]

 We are unpersuaded by the husband's contention that the division is inherently unequal and therefore clearly contrary to the plain language of the divorce judgment. The husband maintains that, although the benefit permissibly may be divided equally, allowing the wife the right of election to the children if she predeceases him is inequitable because his FERS pension 

 Page 794 

terminates upon his death, he cannot leave his share of the pension to the children, and her portion of the pension benefit would revert to him in the absence of an election for the benefit of the children. The wife claims that the division of all the parties' pensions will be unequal if she is not allowed to name their children as beneficiaries in the event that she predeceases the husband, because he has that right under her retirement plans.

 Before turning to these arguments, we note three underlying considerations. First, this issue arose during the COAP preparation process and was not raised by the parties at the divorce trial. Neither their stipulation nor the proposed findings and rulings contained any discussion of what would happen if the wife predeceased the husband. Subsequently, the parties asked the contempt judge to determine not just whether each pension had been equally divided, but whether the division was equal across several different pensions. Not only was there no record upon which to do this, but the trial judge was entitled to rely on the parties' representation that they had agreed to divide the pensions equally in making an equal division of each pension. That division became final in the absence of an appeal from the divorce judgment; none was filed in this case.

 Second, the apparent confusion in this case appears to derive from a lack of understanding of the FERS pension, which, as previously noted, is a pension in which the benefit is defined by age, salary, and years of service and calculated by OPM based on the type of pension elected, see 5 U.S.C. §§ 8401-8425; it is therefore more like a private sector defined benefit plan. In such a plan it is the benefit that is divided; there is no individual account, and the value is therefore much more difficult to quantify. [Note 14] The type of dispute presented here is unlikely to arise under a defined contribution plan, such as the typical 401(k) or 403(b) plan, [Note 15] where participants have an individual account in their name, and that account is divided as of a date certain, plus or 

 Page 795 

minus investment gains or losses. Although defined benefit plans may be encountered less frequently than individual account plans, many public sector employees and some private sector employees still participate in them. [Note 16] Therefore, if parties discern an inequity either in a percentage division of a pension, particularly a defined benefit pension, or the rights of election attendant to the benefit, the better practice is to raise these issues at the time of trial, supported by an evidentiary record. See Cavanagh v. Cavanagh, 490 Mass. 398, 403-404 (2022) (describing parties' obligation to provide complete record).

 Third, these arguments are particularly ill-suited to resolution in a contempt proceeding, as opposed to at trial or by the procedural mechanisms by which a DRO may be reviewed. However, the issues have been fully briefed and argued, and in the interest of judicial economy, we address the husband's argument.

 Based on the record we have before us, which contains the husband's representation that the FERS pension ceases upon his death, a representation the wife accepts and that appears to be supported by authorities, see note 2, supra, allowing the wife to elect their children as her beneficiaries is consistent with the divorce judgment. We understand the parties' representation to be that the wife takes her fifty percent share of the husband's pension, payable at such time as FERS permits. If she predeceases him, he continues to receive his share. If she designates the children of the marriage as her beneficiaries, the children will receive her fifty percent share until his death. The division remains equal and gives full effect to the divorce judgment. There is no inequity as between the right of election and the divorce judgment, and there is no language in the judgment, much less a clear and unequivocal command, that would countermand the wife's right of election.

 Conclusion. The order denying the wife's motion for relief from judgment pursuant to Mass. R. Dom. Rel. P. 60 (b) is reversed. So much of the order and partial judgment dated January 31, 2020, as pertains to the adjudication of contempt and the 

 Page 796 

disposition of the wife's share of the FERS pension if she predeceases the husband is vacated, as is the related award of attorney's fees. The husband's request for appellate fees is denied. [Note 17]

So ordered.

FOOTNOTES
[Note 1] See generally United States Department of Labor, Employee Benefits Security Administration, FAQs About Qualified Domestic Relations Orders, https://www.dol.gov/sites/dolgov/files/EBSA/about-ebsa/our-activities/resource-center/faqs/qdro-overview.pdf [https://perma.cc/99PB-AG9W]. ERISA prohibits the assignment or alienation of pension benefits, a prohibition which for a time appeared to be in conflict with domestic relations law in some States. The Retirement Equity Act of 1984, Pub. L. No. 98-397, 98 Stat. 1426, addressed this conflict by amending ERISA and the Internal Revenue Code to provide a procedure for approving domestic relations orders dividing pension plan benefits, and for awarding survivor benefits. See P. Shewmaker & J.R. Lewis, The Complete QDRO Handbook 4 (4th ed. 2019) (QDRO Handbook). 

[Note 2] FERS is not an ERISA plan. See 29 U.S.C. §§ 1001(32), 1003(b)(1), 1051 (excluding governmental plans). For general guides to Federal pensions, see QDRO Handbook, supra at c. 12; J. Markham, Representing Federal Employees and Their Spouses in Divorce (2021). OPM has also published its own guide. See A Handbook for Attorneys on Court-ordered Retirement, Health Benefits and Life Insurance under the CSRS, FERS, FEHB and FEGLI (rev. July 1997), https://www.opm.gov/retirement-services/publications-forms/pamphlets/ri38-116.pdf [https://perma.cc/5Y52-W64T]. See also Court-ordered Benefits for Former Spouses (rev. July 2014), https://www.opm.gov/retirement-services/publications-forms/pamphlets/ri84-1.pdf [https://perma.cc/6XR2-9H43]. 

[Note 3] The payment of the Social Security benefit is governed by Federal law, which preempts the field, and those benefits are not subject to division as part of the marital estate. A judge may take the amount of the anticipated Social Security benefit into account, however, in dividing other marital assets. See Mahoney v. Mahoney, 425 Mass. 441, 446-447 (1997). Alternatively, the judge may take into consideration the Social Security benefit received in determining a spouse's income when awarding support, although the judge may not award any portion of the benefit. See id. at 447 ("There is no requirement as to precisely how a judge must consider anticipated Social Security benefits"). Cf. Wooters v. Wooters, 74 Mass. App. Ct. 839, 841-843 (2009) (income derived from exercise of stock options awarded postdivorce was income under divorce judgment). Any payments children receive as Social Security disability income dependency benefits may be credited toward child support obligations. See Rosenberg v. Merida, 428 Mass. 182, 186 (1998). 

[Note 4] The trial judge divided the TSP equally, but made adjustments for loans and withdrawals taken by the husband, and awarded the wife $376,356.50 and the husband $226,356.50, subject to gains or losses on the parties' proportionate shares through the date of division. There was no appeal from this aspect of the divorce judgment, and no claim regarding the TSP benefit has been raised in this appeal. 

[Note 5] The trial judge's rationale was as follows: 

"The husband has a [FERS] pension valued at $714,342, with a marital coverture portion of $458,212, and a [TSP] valued at $602,713, with no credible evidence having been presented as to any value accrued prior to the marriage. The parties agree that the marital coverture portion of their retirement accounts should be divided equally. To the extent allowed by the [FERS], the husband shall provide a survivor annuity to the wife payable upon the death of the husband. Without this provision, the wife would effectively lose any interest granted to her upon the husband's death."

[Note 6] Both parties timely filed the required memoranda -- the husband's was docketed on November 18, 2019, and the wife's was docketed on November 21, 2019. On January 31, 2020, the contempt judge issued a partial judgment on the complaints for contempt, in which she noted that she had not received the wife's memorandum. The wife filed a motion for relief from judgment pursuant to Mass. R. Dom. Rel. P. 60 (b) stating that she had filed a memorandum and asking the contempt judge to consider it. The motion was denied, and the wife filed a separate appeal from the denial. 

[Note 7] The contempt judge adopted her ruling verbatim from the husband's memorandum. This reference to the husband's death was in error, as it is clear from the context of the order that the contempt judge intended to address the status of the FERS pension should the wife predecease the husband. 

[Note 8] These regulations have no application to the TSP. See 5 C.F.R. § 838.101(b)(2)(d). 

[Note 9] Section § 838.122 provides: 

"State courts are responsible for --

"(a) Providing due process to the employee or retiree;

"(b) Issuing clear, specific, and express instructions consistent with the statutory provisions authorizing OPM to provide benefits to former spouses or child abuse creditors and the requirements of this part for awarding such benefits;

"(c) Using the terminology defined in this part only when it intends to use the meaning given to that terminology by this part;

"(d) Determining when court orders are invalid; and

"(e) Settling all disputes between the employee or retiree and the former spouse or child abuse creditor."

[Note 10] There are several other "default" provisions in the regulations that state what OPM will do if the COAP is silent. Some examples are the meaning of the terms "annuity" and "gross annuity," the disposition of postretirement cost of living adjustments, the amount of the surviving spouse annuity, and the like. See 5 C.F.R. §§ 838.306(b), 838.612, 838.625(c), 838.735, 838.921; QDRO Handbook, supra at 204. These default provisions may be a trap for the unwary, but they do not purport to limit the judge's authority to order a disposition that is contrary to the default interpretation so long as the order is clear and consistent with Federal law. 

[Note 11] No question of Federal preemption is presented in this case. Contrast Stacy, 97 Mass. App. Ct. at 164-165, and cases cited (anti-assignment/anti-alienation provisions of Federal law bar division of veteran's disability benefit in divorce; garnishment of benefits paid for child support allowed). 

[Note 12] Similarly, in private sector plans, the trustees of both defined benefit plans and defined contribution plans are fiduciaries of the trust under which the plans are created and administered. See 29 U.S.C. § 1002(34), (35). See also QDRO Handbook, supra at 15-17, 22-23. 

[Note 13] The trial judge may divide a pension between the parties but is without authority to make an "outright assignment" of any portion of the asset to the children of the marriage. See Passemato v. Passemato, 427 Mass. 52, 57 (1998) (creation of college educational trust fund did not constitute impermissible assignment); Johnson v. Johnson, 425 Mass. 693, 695 (1997) ("marital property must be assigned to either the husband or the wife"); Levine v. Levine, 394 Mass. 749, 750 (1985) ("The broad discretion of a judge under G. L. c. 208, § 34, to dispose of and assign property . . . extends by its own language only to assignment of property to the parties themselves, not to their children or any other nonparty"). See also Ketterle v. Ketterle, 61 Mass. App. Ct. 758, 764 (2004). 

[Note 14] Although the parties purported to attach a value to the FERS pension in their stipulation, see note 5, supra, the assumptions and methods by which they assigned a value to a defined benefit pension (as opposed to a projected value of a future stream of income from a pension benefit) is not disclosed on the record. 

[Note 15] Or such as the TSP benefit in this case, as to which there is no challenge. The TSP is more akin to a private sector individual account plan. See 29 U.S.C. § 1002(34). It is held in the name of the individual participant, is participant directed and portable, and is susceptible to mathematical division. See 5 U.S.C. §§ 8433, 8439. 

[Note 16] "In 2019, [twenty-six] percent of civilian workers had access to defined benefit plans, including [sixteen] percent of private industry workers and [eighty-six] percent of state and local government workers." United States Department of Labor, Bureau of Labor Statistics, Employee Benefits Survey, https://www.bls.gov/ncs/ebs/factsheet/defined-benefit-frozen-plans.htm [https://perma.cc/98LA-568E]. 

[Note 17] It remains for the parties to request a judge of the Probate and Family Court to approve a COAP that is consistent with this opinion. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.