APPEALS COURT 
 
 S.S. vs. S.S.

 
 Docket:
 23-P-1022
 
 
 Dates:
 June 3, 2024 - August 27, 2024
 
 
 Present:
 Milkey, Shin, & Englander, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Divorce and Separation, Alimony, Child support, Division of property. Mental Health.
 
 

  
      Complaint for divorce filed in the Middlesex Division of the Probate and Family Court Department on May 20, 2021.
      The case was heard by Christine D. Anthony, J.
      Maureen E. Booth (Melanie D. Foxx also present) for the husband.
      Marcus L. Scott for the wife.
      SHIN, J.  A judge of the Probate and Family Court issued a second amended judgment of divorce nisi in which she deviated from the presumptive durational limit on alimony set out in G. L. c. 208, § 49 (b), and ordered the former husband (husband) to pay alimony to the former wife (wife) potentially for the remainder of the wife's life.  The husband appeals, arguing that the evidence did not support the judge's decision to deviate.  He further challenges the amount of the alimony award (and, relatedly, the amount of child support that the judge ordered the wife to pay to the husband) and the division of the marital estate.[1]  With respect to the duration of the husband's alimony payments, we agree that the judge should not have deviated from the presumptive limit because the wife failed to meet her burden of showing that the asserted ground for deviation, her mental health condition and resulting inability to work, is reasonably likely to persist beyond the presumptive termination date.  We therefore vacate the portion of the second amended judgment relating to the duration of the alimony award, without prejudice to the wife's renewing her request for deviation through a future complaint for modification.  As we are unpersuaded by the husband's remaining arguments, we affirm the second amended judgment in all other respects.
      Background.  The parties were married in India on October 25, 2009.  Their first child was born in February 2014.  Their second child, who was delivered in September 2020, was stillborn.  Both parties are highly educated.  The husband obtained a Ph.D. in 2004 and has worked continuously at a university in Boston since that time.  The wife obtained a master's degree in urban health in 2018 and worked at times during the marriage as a dental assistant.
      The husband filed a complaint for divorce on May 20, 2021, on the ground of irretrievable breakdown of the marriage.  Trial was held on January 10, 2023.  Only two witnesses testified:  the husband, and the special master appointed to sell the former marital home.  The judge admitted several exhibits in evidence, including a report of the guardian ad litem (GAL) appointed to evaluate the issues of custody and a parenting plan for the parties' child.  The judge also accepted a stipulation of uncontested facts submitted by the parties.
      The evidence regarding the wife's mental health condition, which was a key factor in the judge's determination of the alimony award, consisted of the GAL's report and the parties' stipulation.  The GAL's report, which the judge credited in full, describes a mental health evaluation that the wife was required to undergo in 2018 in connection with a District Court criminal case.  The doctor who conducted the evaluation, Roger Gray, issued a report in November 2018, diagnosing the wife with delusional disorder, persecutory type.  Dr. Gray noted, however, that schizophrenia could not be ruled out and that "[t]he future expressions of [the wife's] disorder will most likely clarify the diagnostic question."
      Later in his report, the GAL states that the wife was diagnosed with schizophrenia while visiting India in 2019, but that the evaluator indicated that follow up was necessary, which was not done.  The GAL's report also discusses an evaluation of the wife conducted in 2021 by psychiatrist Timothy Scarella.  During that evaluation the wife acknowledged she was depressed, but denied experiencing paranoia or delusions and claimed that Dr. Gray misdiagnosed her in 2018.  Dr. Scarella reported a working diagnosis of "[m]ajor [d]epressive disorder, single episode, severe, partial remission."  The GAL's report further notes that the wife's therapist reported in 2021 that the wife presented as "relatively clinically stable," did not show any signs of schizophrenia, and was working to manage "her depressive and anxiety symptoms."  Ultimately, the GAL concluded that the wife's "diagnosis and treatment still need clarification," and he recommended the services of a mental health case manager to help the wife develop a treatment plan targeted at her needs.
      The parties' stipulation of uncontested facts also references the court-ordered evaluation conducted by Dr. Gray.  The parties agreed that Dr. Gray diagnosed the wife with delusional disorder, persecutory type, but could not rule out schizophrenia.  In addition the stipulation states that the parties "reported to the GAL that she was diagnosed with [s]chizophrenia in India, while on visits there in 2018[2] and took medicine for same, evidence of which was presented to the GAL by the [h]usband."  In light of these diagnoses, the parties agreed that the wife's "mental health is impaired" and that, "as a result of the impairment," she "is limited in her ability to work and care for the child."
      Based on these two documents, the judge found that the wife suffers from "significant mental health issues."  In support the judge cited Dr. Gray's diagnosis of delusional disorder, persecutory type, or possible schizophrenia; the parties' report to the GAL that the wife was diagnosed with schizophrenia in India; and their stipulation regarding the wife's mental health impairment and inability to work or care for the child.  The judge also mentioned the opinion of the GAL that the stillbirth of the parties' second child in September 2020 aggravated the wife's mental health issues.
      These findings then formed the basis of the judge's decision to deviate from the presumptive durational limit on alimony.  The judge determined that the length of the parties' marriage, for purposes of calculating alimony, was 139 months (about eleven and one-half years) and that the presumptive durational limit for marriages of this length would be ninety-seven months (about eight years).  The judge concluded, however, that the interests of justice required deviation because the wife "suffers from significant mental illness," which renders her "currently unable to engage in employment."  While acknowledging that "the marriage was relatively short in duration," the judge reasoned that deviation was still warranted because the wife "is entirely dependent on [the] [h]usband for her support as a result of her significant mental health issues."  The judge accordingly ordered the husband to pay alimony to the wife until either party's death,[3] the wife's remarriage, or further order of the court, whichever is first to occur.
      Discussion.  1.  Duration of alimony.  Under G. L. c. 208, § 49 (b) (3), "[i]f the length of the marriage is [fifteen] years or less, but more than [ten] years, general term alimony shall continue for not longer than [seventy] per cent of the number of months of the marriage."  A judge may deviate from this durational limit, however, "upon a written finding . . . that deviation . . . [is] required in the interests of justice."  G. L. c. 208, § 49 (b).  The husband contends that the interests of justice did not require deviation in this case because, although the parties stipulated that the wife is limited in her ability to work because of her mental illness, the judge had no evidence before her that the wife's condition is permanent.  In these circumstances, the husband says, the judge was obligated to enforce the presumptive limit of ninety-seven months and should have put the burden on the wife to request additional alimony through a complaint for modification if her mental condition is likely to affect her ability to work beyond that time period.  According to the husband, by instead deviating from the presumptive limit in the initial alimony order, the judge improperly put the burden on the husband to seek to terminate his alimony obligation after ninety-seven months, in contravention of the guidelines provided in George v. George, 476 Mass. 65, 69-71 (2016).
      To the extent the husband is arguing that a complaint for modification is the sole vehicle through which a party may request deviation, we do not read George to stand for that proposition.  In George, 476 Mass. at 69-71, the court set out guidelines for how judges should apply the "interests of justice" standard of G. L. c. 208, § 49 (b).  At the start of that discussion, the court quoted G. L. c. 208, § 53 (e), which states that "[i]n setting an initial alimony order, or in modifying an existing order, the court may deviate from duration and amount limits for general term alimony . . . upon written findings that deviation is necessary" (emphasis added).  George, supra at 69, quoting G. L. c. 208, § 53 (e).  The court then went on to state that "a judge should evaluate the circumstances of the parties in the here and now, that is, as they exist at the time the deviation is sought, rather than the situation as it existed at the time of divorce."  George, supra at 70.  Viewing this statement in context, we do not construe the last clause -- "rather than the situation as it existed at the time of divorce" -- to mean that a judge cannot consider a request for deviation at the time of divorce, as that would be irreconcilable with G. L. c. 208, § 53 (e).  Rather, we believe that the court was addressing the specific question of how a judge should evaluate a request for deviation when raised in a modification proceeding.  But when, as here, the request is made in a divorce proceeding, it is consistent with G. L. c. 208, § 53 (e), and procedurally proper, for a judge to consider whether to deviate in setting the initial alimony order.
      That said, we agree with the husband that the judge's findings do not demonstrate that deviation was warranted.  For marriages such as this one that ended after the effective date of the Alimony Reform Act, St. 2011, c. 124 (act), the presumptive durational limits apply unless the recipient spouse "prov[es] by a preponderance of the evidence that deviation beyond the presumptive termination date is 'required in the interests of justice.'"  George, 476 Mass. at 70, quoting G. L. c. 208, § 49 (b).  Because a judge deciding a request for deviation must "evaluate the circumstances of the parties in the here and now," George, supra, it follows that, when the request is made in a divorce proceeding, as opposed to a modification proceeding, the recipient spouse has the burden of proving that the interests of justice require deviation at the time of the divorce.  This means in turn that the recipient spouse must prove that the grounds for deviation asserted at the time of the divorce are reasonably likely to be present beyond the presumptive termination date.
      Here, the judge made no findings about the extent to which the wife's mental illness and resulting inability to work would continue beyond the presumptive termination date.  The act sets forth a nonexhaustive list of "[g]rounds for deviation," including a recipient spouse's "chronic illness" or "unusual health circumstances," "inability to provide for [her] own support by reason of [her] deficiency of property, maintenance or employment opportunity," and "any other factor that the court deems relevant and material."  G. L. c. 208, § 53 (e).  While the judge correctly cited these factors, and placed the burden of proof on the wife in accordance with George, in the end the judge found only that the wife proved she is "currently" unable to work; the judge did not find that the wife's mental health condition cannot be treated or that it will likely prevent her from working beyond the presumptive durational limit of ninety-seven months.  To the extent such findings are implicit in the judge's decision, they are clearly erroneous because there is no record evidence to support them.  As mentioned, the GAL's report, credited by the judge, states that the wife's "diagnosis and treatment still need clarification."  The GAL further noted that the wife is currently being treated for depression as the primary issue, rather than the issues diagnosed in 2018.  And again, the judge found the wife to be highly educated and that she worked intermittently as a dental assistant during the marriage.
      In light of the entire record, we agree with the husband that the evidence does not support a finding that the wife's current mental health issues and their effect on her employability would persist beyond ninety-seven months.  Absent such evidence the wife did not meet her burden of proving that the interests of justice require deviation from the presumptive durational limit in the "here and now," that is, at the time of the divorce.  George, 476 Mass. at 70.  The judge thus erred by deviating in the initial alimony order and, by doing so, improperly shifted the burden to the husband to file a complaint for modification to terminate his alimony obligation on the presumptive date.  See id. at 69 ("for marriages that ended after [the act's effective] date, the recipient spouse will be the moving party[4]").
      We stress that nothing we have said precludes the wife from filing a complaint for modification to extend the husband's alimony obligation beyond the presumptive date.  If the wife brings such a case, she will have the burden at that time of proving that deviation is warranted.  See George, 476 Mass. at 70.  In determining whether the wife has met her burden, "the judge may properly consider the impact the [wife's] disability continues to have on [her] in determining whether deviation beyond the act's durational limits is 'required in the interests of justice.'"  Id., quoting G. L. c. 208, § 49 (b).
      2.  Amount of alimony and child support.  Under G. L. c. 208, § 53 (b), "the amount of alimony should generally not exceed the recipient's need or [thirty] to [thirty-five] per cent of the difference between the parties' gross incomes established at the time of the order being issued."  After determining the husband's income to be $157,500 and the wife's income to be zero, the judge ordered the husband to pay the wife $984 per week in alimony, equivalent to 32.5 percent of the difference between their incomes.  Then, applying the child support guidelines, the judge ordered the wife to pay the husband $190 per week in child support, resulting in a net weekly obligation to the husband of $794.
      The husband does not challenge the judge's calculations but raises various arguments why the judge erred by declining to either reduce the alimony award or offset it by deviating upward from the child support guidelines.  At bottom these arguments amount to a claim that the respective support orders result in the husband's bearing a disproportionate share of the financial burden from the divorce, given that he has full custody of the parties' child.[5]  We are unpersuaded.
      A judge has broad discretion in determining the amount of alimony, and we will not reverse an award on appeal unless it is "plainly wrong" or "excessive."  D.B. v. J.B., 97 Mass. App. Ct. 170, 177 (2020), quoting Zaleski v. Zaleski, 469 Mass. 230, 236 (2014).  Here, the judge carefully explained the basis for her orders.  As she found, the wife has no income and is currently unable to work because of her mental illness, whereas the husband has a stable job with significant income and "will continue to accumulate income and assets as a result of that position."  The judge also considered that the husband "has the ability to engage in a self-employment business that he grew in just two years into a stream of income to him of approximately one thousand dollars per week in gross income."[6]  This was not error, as the husband suggests.  Although the judge credited the husband's testimony that he is currently unable to work beyond his full-time position while also caring for the child, it was still within the judge's discretion to consider the husband's potential future income from his self-employment business in calculating the alimony award.  See Drapek v. Drapek, 399 Mass. 240, 246-247 (1987).
      After considering all of these factors, as well as the wife's ongoing obligation to pay for the visitation supervisor, the judge concluded that the respective support orders "achieve[d] the most equitable result for the parties and [the] child."  In contesting this conclusion, the husband points out that, per the judge's calculations, the husband's weekly expenses are $1,585 while his weekly income after the payment of alimony and receipt of child support will be $1,035, leaving him with a shortfall of $550.  But even assuming these calculations are correct,[7] the husband still has not shown that the amount he was ordered to pay to the wife was plainly wrong or excessive.  The judge recognized that "the marital lifestyle cannot be maintained by the parties post-divorce" and that "[b]oth parties will experience a downturn in their respective lifestyles."[8]  Thus, because the parties' "financial resources are inadequate to maintain the marital standard of living," the judge appropriately endeavored to "reach a fair balance of sacrifice" between the parties in light of their respective financial circumstances.  Pierce v. Pierce, 455 Mass. 286, 296 (2009).  See Calvin C. v. Amelia A., 99 Mass. App. Ct. 714, 720 (2021).  The husband's generalized assertions that he will bear the greater sacrifice do not demonstrate an abuse of the judge's broad discretion.
      3.  Division of marital assets.  The judge awarded the wife fifty-five percent of the marital assets, which totaled about $1.2 million, reasoning that a slightly unequal division was warranted because of the husband's far greater ability to acquire income and assets in the future.  The husband claims that this was error, based largely on evidence that he sought to introduce through a postjudgment motion under Mass. R. Dom. Rel. P. 60 (b) (1) and 60 (b) (6).  The husband did not file an appeal from the judge's order denying his rule 60 (b) motion, however.  As a result, these arguments are not properly before us.  See Visnick v. Hawley, 69 Mass. App. Ct. 901, 902 (2007).
      The husband also claims that the judge erred by not dividing the wife's jewelry, which the judge found was gifted to her by her family before and during the marriage.  A judge has broad discretion not to allocate gifted assets when determining how to divide a marital estate equitably.  See Williams v. Massa, 431 Mass. 619, 626 (2000).  The husband makes no reasoned argument why the judge's decision not to allocate the wife's gifted jewelry was an abuse of discretion.  Likewise, the husband's remaining challenges to the property division are too undeveloped to rise to the level of adequate appellate argument.  See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019).
      Conclusion.  So much of the second amended judgment of divorce nisi as pertains to the duration of the husband's alimony obligation is vacated, and the matter is remanded for entry of a judgment reflecting that the husband's alimony obligation will terminate in accordance with G. L. c. 208, § 49.  In all other respects, the second amended judgment is affirmed.
 
So ordered.
footnotes

          [1] The second amended judgment entered nunc pro tunc to July 11, 2023, the date of the original judgment.  We therefore deem the husband's notice of appeal dated July 28, 2023, to be timely and to reference the second amended judgment.
          [2] The GAL's report states that the visits occurred in 2019.  This discrepancy is not material to our analysis.
          [3] The husband was born in 1974, and the wife was born in 1983.
          [4] In the context of marriages that ended after the act's effective date, we construe George's reference to "moving party" to mean the party who has the burden of requesting deviation (i.e., the recipient spouse), whether the request is made during the divorce proceeding or by filing a complaint for modification.
          [5] Several of the husband's individual arguments are unsupported by adequate discussion, citation to authority, the record, or citation thereto, so we need not address them.  See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019).  These include the husband's arguments that the judge erred under Cavanagh v. Cavanagh, 490 Mass. 398 (2022), by including employer retirement contributions in his income, and that the judge failed to consider the increased cost to the husband if he needs to refinance his condominium.
               [6] Specifically, the judge found that the husband earned $19,093 in 2020 and $47,225 in 2021 from his self-employment business.
          [7] In determining the husband's net income, the judge took his gross annual income of $157,500 and subtracted his tax obligations, which the parties stipulated to be thirty-two percent for Federal taxes and 5.5 percent for Massachusetts taxes.  It appears, however, that the judge incorrectly applied what is the husband's marginal Federal tax rate of thirty-two percent to his entire income, arriving at an after-tax annual income of approximately $98,000.  If the thirty-two percent figure is treated as the husband's marginal tax rate, and not his effective tax rate, his after-tax income would be considerably higher than what the judge found.  In any event, for purposes of this appeal, we accept the judge's calculations as the wife does not challenge them and any error inured to the husband's benefit, giving us more reason not to disturb the amount of the alimony award.
               [8] The judge found that the wife's weekly expenses are $1,200 while her weekly income after receipt of alimony and payment of child support will be only $794.